C. M. CONLEY, *et al.*, *vs.* SUPERVISORS OF CALHOUN COUNTY.

## January Term, 1868.

1. It is the province of the political, and not the judicial, department of the federal government to determine when the late civil was over.

2. Where by an act of the general assembly a vote was to be taken "after the present war is over," and it was taken on the fourth Thursday of May, 1866, before the proclamation of the President of the United States, declaring that the insurrection was at an end, and that peace and tranquility reigned throughout the whole of the country, (issued on the 20th day of August, 1866,) such vote is a nullity, being taken before the act had validity.

3. A general statute without negative words will not repeal the particular provisions of a former one, unless the two acts are irreconcilably inconsistent. But if they are irreconcilably inconsistent the first must give way to the last.

4. A statute is impliedly repealed by a subsequent one revising the whole subject matter of the first.

5. An act passed in 1862 by the general assembly of Virginia, provided, that at a certain time, after the war was over, a vote might be had by the people of C. county on the matter of removing their county seat. An act of the West Virginia legislature, passed in 1863, provided that if it became necessary or desirable to remove a county seat, and a majority of the board of supervisors deemed it so, and it was approved by three-fifths of the voters, &c., it might be done. Where the vote under the act of 1862 was not taken until May, 1866, it was HELD:

     1. That the operative part of the act of 1862 was repealed by the act of 1863.

     2. That it was also impliedly repealed by the same act, which revised the whole subject matter, and was passed in pursuance of a provision of the constitution of West Virginia, which took effect after the passage of the act of 1862, and gave to the board of supervisors the superintendence of the internal affairs and fiscal concern, of the county.

---

*Absent from illness.

On the 25th day of June, 1866, the prosecuting attorney for the county of *Calhoun* brought to the attention of the circuit court of that county, certain matters of record, poll books, &c., to show that by a vote of the people, in pursuance of an act of the general assembly, passed February 13th, 1862, the location of the county seat had been changed from *Arnoldsburg* to *Simon P. Stump's* farm. Also that by a tie vote of the board of supervisors of the county had on the 6th day of June, 1866, they had refused to take up and examine the result of the election held by the people on the fourth Thursday of May preceding, concerning the removal. Upon an examination of the evidence the circuit court was of opinion that the election had been held according to law, and declared that the poll books showed that the greatest number of votes had been cast for the removal to *Stump's* farm, and accordingly ordered that it should, after the rising of the term then passing, be the permanent county site of *Calhoun* county, and that the supervisors of the county should provide suitable buildings for the holding of courts at that place in conformity to law. Before this order was made, *C. M. Conley, George Lynch, Jr.,* and *M. V. Fleming,* on behalf of themselves and other citizens of the county, objected to any proceedings of removal being had by the circuit court, on substantially the following grounds:

"First. Because under the constitution and laws of the State of *West Virginia* the board of supervisors of *Calhoun* county have sole and exclusive jurisdiction over the subject in controversy, and the circuit court has therefore no jurisdiction in the premises.

Second. Because the said act of February 13th, 1862, being in conflict with, and repugnant to, the constitution and laws of the State of *West Virginia,* is repealed, and therefore no legal election under it could be held in any manner.

Third. If any election could be held under said act of 13th February, 1862, such election must be held and conducted in all respects in conformity with said act, and as elections were then conducted and certified under the laws of the State of *Virginia,* then existing."

The foregoing facts, with others that need not be mentioned here, appeared by a bill of exceptions taken to the order of the court. The parties named above applied to this court for a supersedeas, and asked that the supervisors of *Calhoun* be made parties and that the order of the court below be annulled.

*G. H. Lee* for the plaintiffs in error.
*Stanton & Allison* for the defendants in error.

MAXWELL, J. This is a supersedeas to an order of the circuit court of Calhoun county made on the 25th day of June, 1866, declaring the result of a vote taken in the said county whether they would retain the county seat at Arnoldsburg, the place then fixed by law, or remove the same to Simon P. Stump's farm, opposite the mouth of Philip's run, in said county. The vote was taken by virtue of an act of the general assembly of Virginia, passed February 13th, 1862. The first section of this act provides, " That it shall be lawful to open polls at the various places of voting in the county of Calhoun on the fourth Thursday in May, after the present war is over, for the purpose of taking the sense of the voters of said county," &c. Under the law of Virginia in force at the time of the passage of this act every act of assembly was to commence and be in force upon and after the first day of May next succeeding the passage thereof, unless another day for the commencement thereof was particularly mentioned in the act itself or otherwise expressly provided. Code of Virginia, 1860, chap. 16, sec. 3, p. 113.

The general assembly did not leave this act to take effect on the first day of May next succeeding its passage under the general law. Nor does the act mention another certain day for its commencement, but it provides that the polls shall be opened at a certain time after the happening of an uncertain event. It therefore becomes material to inquire whether or not the condition or contingency on which this act depended for its vitality had happened on the fourth Thursday in May, 1866, the time the vote was taken under it.

At the time the act was passed an insurrection amounting to a civil war existed in the United States, and it must be supposed that this is the war to which the act refers.  *Prize cases*, 2 Black's Rep., 635; *Hedges* vs. *Price*, 2 West Virginia Rep., 192; *Hawver*, et al., vs. *Seldenridge*, et al., Ibid, 274.   Was that civil war over at the time the poll was taken?   If not the event had not happened on which the act was to take effect.   How are we to determine that question? It is a question to be determined by the political department of the government, and not by the judicial.   The President of the United States by a proclamation issued on the 2nd day of April, 1866, declared that the insurrection which before that time existed in the States of Georgia, South Carolina, Virginia, North Carolina, Tennessee, Alabama, Louisiana, Arkansas, Mississippi and Florida was then at an end, and was thenceforth to be so regarded.   And by another proclamation issued by him on the 20th day of August, 1866, he declared that the insurrection which before that time existed in the State of Texas was then at an end, and was thenceforth to be so regarded.   And by the last named proclamation the President further proclaimed, "that the said insurrection is at an end, and that peace, order, tranquility and civil authority now exist in and throughout the whole of the United States of America."   Of these proclamations this court must take notice judicially.

According to this last proclamation the insurrection was at an end and peace prevailed throughout the United States of America on the 20th day of August, 1866, so that on that day the war referred to in the act was over and the condition on which the act was to take effect then happened.   On the fourth Thursday of the May then next following, according to the terms of the act, and not before that time, the vote might have been taken under the act.   The vote, however, was taken before the act had vitality, and consequently is a mere nullity.   But suppose that the condition had happened on which the act was to take effect, at the time the vote was taken it is claimed that the act is repealed by chapter 78, section 8, Acts of 1863, page 69, in relation

to the mode of removing county seats. In regard to the mode in which laws may be repealed by subsequent legislation it is laid down as a rule, that a general statute without negative words will not repeal the particular provisions of a former one, unless the two acts are irreconcilably inconsistent. Sedgwick on Statutory and Common Law, page 123; *Brown* vs. *County Com.*, 21 Penn., 37. But if the two acts are irreconcilably inconsistent the first must give way to the last. Another rule is that a statute is impliedly repealed by a subsequent one revising the whole subject matter of the first. Sedgwick on Statutory and Common Law, page 126; 12 Mass. Rep., 537; 5 Pick., 168. To apply the first of these rules to the case under consideration, can the act of February 13th, 1862, be reconciled with the act of 1863, referred to? The act of 1862 provides, "that it shall be lawful to open polls at the various places of voting in the county of Calhoun, on the fourth Thursday in May," &c. Section 8, of the act of 1863, provides that, "if it became necessary or desirable to remove the county seat of any county to any place within the same, and such removal is deemed advisable by a majority of the board of supervisors of such county," &c., and it is approved by three-fifths of the voters, &c. Under the act of 1862, it shall be lawful to open polls without the approval of the board of supervisors of Calhoun county, while under the act of 1863 the removal of the county seat must be deemed advisable by a majority of the board of supervisors of such county before a vote of the people could be had. I think, therefore, that the operative part of the act of 1862 is repealed by the 8th section of the act of 1863. But suppose the first act be tried by the test of the other rule above quoted, that a statute is impliedly repealed by a subsequent one revising the whole subject matter of the first. The constitution of the State of West Virginia took effect after the passage of the act of 1862. The 4th section of the 7th article of the constitution provides that, "the board of supervisors of each county, a majority of whom shall be a quorum, shall under such general regulations as may be prescribed by law, have the superinten-

dence of the internal affairs and fiscal concerns of their county," &c.    The legislature in prescribing general regulation to carry into effect the constitutional provision, on the subject of the removal of county seats, enacted section 8, of chapter 78, Acts of 1863, page 69, revising, as it seems to me the whole subject matter of the act of 1862, and impliedly repealed it.

As the county seat has been located at Stump's farm by an act of the legislature, passed on the 22nd day of January, 1867, since this case has been in this court, there is nothing in the case but a question of costs.

I think the judgment or order complained of will have to be reversed with costs to the plaintiffs in error and the proceeding dismissed by this court.

The President concurred.

ORDER REVERSED, and proceeding dismissed.