SCHWENKE ET AL. V. THE UNION DEPOT AND R. R. CO.

1. If a patent on its face shows that it is issued under and in pursuance of certain acts of congress, and it is true that such acts were repealed prior to the application therefor, the patent is void, and may be impeached in a court of law.

2. An act of congress containing no words of present grant does not of itself operate as a conveyance of the legal title to land.

3. A local and special statute, which adopts, by reference, provisions relating to procedure from an existing general law, is not necessarily abrogated or affected by the subsequent repeal of the act containing the provisions adopted.

4. The law does not favor repeals by implication. The legislative intent to substitute the new for the old law must clearly appear. A stronger repugnancy is necessary where the repeal of a prior special act is claimed to result from the subsequent passage of a general law. The reluctance to recognize a repeal by implication, in the latter case, is still greater when the prior statute is not merely special or local in its operation, but also relates to a purely local subject.

*Appeal from District Court of Arapahoe County.*

THE case is stated in the opinion.

Mr. WM. A. HARDENBROOK, for appellant.

Messrs. TELLER and ORAHOOD, for appellee.

HELM, J.   The assignment of errors in this case contains thirty different specifications. The important ones,

however, may be condensed into two general questions, as follows: *First.* Was appellee, The Union Depot and Railroad Company, at the commencement of this suit, a corporation duly organized and existing under the laws of Colorado? *Second.* Is the patent through which appellee claims, conveying title of the original Denver town site from the United States to Hall, probate judge, in trust, absolutely void?

As shown by the record, appellant deemed it advisable to bring a separate action in the nature of *quo warranto*, directly challenging the corporate existence of the Depot Company. That suit was vigorously prosecuted, and resulted in a decision at the last term of this court affirming the validity of the corporation. *People ex rel. v. Cheeseman et al. (ante,* p. 376).

This decision fully answers and disposes of the first question above stated. Hence we proceed at once to a consideration of the second.

The validity of the patent in question is assailed on the ground that it was issued entirely without warrant or authority of law. The instrument itself contains the declaration that it is issued in pursuance of two certain acts of congress, passed in May, 1844, and in May, 1864, respectively. The former was a general town site law; the latter was a local and special act. In July, 1864, and ten months previous to the patent entry by Hall, congress enacted another general town site law; this last statute contained the following repealing clauses: "The act entitled 'An act for the relief of the citizens of towns upon the lands of the United States, under certain circumstances,' May 23, 1844, and all other acts and parts of acts inconsistent with this act, be and the same are hereby repealed." Vol. 13, ch. 205, p. 343, U. S. Statutes at Large.

Appellant's contention is that this repealing provision swept away both of the previous acts above mentioned,.

and that for this reason the patent is void, and conveyed no legal title whatever to the trustee therein named.

We will not question appellant's right to test the validity of this patent collaterally upon the foregoing ground. We shall assume without argument, that if a patent on its face shows that it is issued under and in pursuance of certain acts of congress, and it is true that such acts were repealed prior to the application therefor, the patent is void.

There is then such "an absolute want of power" as is mentioned in *Sherman v. Buick*, 93 U. S. 209, and cases cited, which renders the instrument liable to impeachment in a court of law. See *Patterson v. Winn*, 11 Wheaton, 380, and cases cited; *Parker v. Duff*, 47 Cal. 554, and cases cited.

It must be conceded at the outset, of course, that the law of 1844 was repealed by that of July, 1864; for it is expressly, in direct terms, so declared.

The discussion will therefore be confined to the question, Was the Denver act abrogated also by the repealing provision above quoted, or did its repeal follow the adoption of the subsequent law by implication?

This act is not, as claimed, an amendment of the law of 1844; it is "An act for the relief of the citizens of Denver, in the territory of Colorado." It is local and special; it was intended to relieve the inhabitants of a particular locality from an inconvenience or disability existing under the general law, and confer upon them certain privileges not bestowed thereby. This important and controlling purpose was attained by the very language of the statute itself; so far it was in no way dependent upon the general town site law of 1844.

The act did not itself operate as a conveyance of the legal title, because no "words of present grant" were inserted therein, and such was not the legislative intention. It recognized and declared a right to title, but required

that a patent issue, and that certain preliminary steps be taken by the probate judge therefor.

This procedure by that officer was incidental to the main purpose of the act; had congress remained silent on this subject, the statute would have been inoperative, but not invalid. That body chose to avoid a useless repetition of lengthy provisions; it incorporated into the Denver act, by reference to the law of 1844, a statement of the preliminary steps required of the probate judge. The following language is used: "except as herein modified, the execution of the foregoing provisions shall be controlled by the provisions of said act of May 23, 1844." We understand this to mean that in procuring patent to the Denver town site and conveying title to the proper parties, the probate judge should proceed in the manner prescribed by the former law for the government of probate judges generally, in making town site entries; it is just the same, in our judgment, as though congress had copied into the latter act these provisions from the former.

It is therefore a logical sequence that the identity of the two laws, in this respect, does not affect the following propositions: that the latter is independent and complete; that the procedure for procuring patent and executing the trust incorporated by reference to the prior general law, remained in force for the purpose of carrying out the provisions of the special act; and that the existence and effect of the latter were not jeopardized by the repeal of the former.

"A statute which refers to and adopts the provisions of another statute is not repealed by the subsequent repeal of the statutes adopted." *Sika v. The Chicago & N. W. R'y*, 21 Wis. 375; *Wood v. Hustis*, 17 id. 429; *Crosby et al. v. Smith et al.* 19 id. 472.

We prefer, at present, to limit the foregoing doctrine to the facts in the case at bar. Our statement of it, then, is as follows: A *local* and *special* statute, which adopts,

by reference, provisions relating to *procedure* from an existing general law, is not necessarily abrogated or affected by the subsequent repeal of the act containing the provisions adopted.

The case of *Ellison v. Jackson Water Company*, 12 Cal. 542, cited by counsel for appellant, is not in point. The act there held inoperative by the repeal of the former law was general, not special; it was simply a supplement or amendment to the law repealed; it extended the provisions of the prior statute to include things not therein enumerated, viz., "bridges, ditches, flumes or aqueducts, constructed to create hydraulic power, or for mining purposes." The court appropriately say that the repeal "carried with it the *supplementary* act;" "without the original act there was no mode of enforcing the *supplementary* act."

But it is argued by counsel that the provisions of the Denver act are repugnant to and inconsistent with the statute of July, 1864; that, therefore, ignoring its dependence upon the law of 1844, there was both an implied and an express repeal thereof; that such repugnancy and inconsistency in and of themselves operated to produce a repeal by implication, and also bring the statute within the express provision repealing all inconsistent acts.

It is hardly necessary for us to consider these propositions separately. If there is no such repugnancy as would produce a repeal by implication, it will, in our judgment, appear that in this instance there is no such conflict or inconsistency as produces an express repeal under the declaration quoted.

The law does not favor repeals by implication; they will not be adjudged to follow, unless there is such a positive repugnancy that the two statutes cannot consistently stand together; the legislative intent to substitute the new for the old law must clearly appear; this intent is never *prima facie* presumed. Potter's Dwarris, p. 155, and cases cited; Bishop on Written Laws, sec. 154, and cases.

And a stronger repugnancy or clearer indication of legislative intent is necessary where the repeal of a prior *special* act is claimed to result from the subsequent passage of a *general* law. "A general affirmative statute does not repeal a prior particular statute, * * * unless negative words are used, or unless there is such irreconcilable inconsistency as indicates an intent of the legislature to repeal." Sedgwick on Construction of Statutes, p. 98, note (a), and cases cited; *Conly et al. v. Supervisors*, 2 West Va. 416; *Ottawa v. La Salle County*, 12 Ill. 339; *Brown v. County Commissioners*, 21 Pa. St. 43; *Blain v. Baily*, 25 Ind. 165; *Williams v. Pritchard*, 4 T. R. 2.

The reluctance to recognize a repeal by implication, in the latter case, is still greater where the prior statute is not merely special or local in its operation, but also relates to a purely *local subject;* it has been said that then the "language and scope of the subsequent act must be equivalent to an express repeal." *Cole v. The Board of Supervisors*, 11 Iowa, 552.

Of course, the cardinal rule of construction prevails in this field. The inquiry in all cases is: What did the legislature intend? The numerous and discordant decisions upon this subject attest the difficulty of discovering and declaring safe subordinate tests as general rules. But the foregoing remarks indicate that there is a recognized difference in the degree of clearness with which the intent must appear; a difference dependent upon the character and purpose of the prior statute. In this particular the cases seem to be in harmony; but the minor tests adopted by courts, in their endeavor to arrive at the legislative design in this matter, are not uniformly applied, even under similar circumstances; and each particular case must, of necessity, be determined largely upon its own peculiar facts and surroundings, irrespective of rules and precedents.

We apprehend, however, that, with the light afforded

by the recognized distinctions above stated, there will be no serious difficulty in correctly answering the question of repeal in the case before us.

Were the Denver act and that of July, 1864, both general, we might be constrained to agree with counsel for appellant; these acts provide systems of procedure for patent radically different; the former preserves the trustee method of making entries; the latter discards it entirely, and substitutes a system wholly at variance therewith; there is nothing to indicate that the latter was designed to be cumulative; it cannot, therefore, be contended that both systems are applicable to the same patent proceedings.

But the Denver statute possesses three characteristics which, in our judgment, under the law above stated, prevent its repeal on the ground of inconsistency or repugnancy: *First*, it is *special*, in that its operation is confined to a particular municipal corporation; *second*, it treats of a purely *local subject;* and *third*, there is but one thing to be done, a single act or proceeding authorized, viz.: the procuring of patent to certain specified quarter sections of land. Upon issuance of this patent the act practically performed its office. This is unlike those cases where the particular thing to be done is repeated at stated or irregular intervals; as where a peculiar or unusual tax is authorized to be collected from year to year by the city authorities, or where a special penalty is visited in a particular city or county, upon the commission of a designated offense.

The primary reason for declaring repeals by implication is that conflict and confusion may not prevail in the application of the law. It is presumed that the legislature intended that no difficulty of this kind should exist. Hence where two statutes relating to the same subject are so conflicting that they cannot both be applied to the subject referred to, and the later is not cumulative, courts have recourse, when necessary to avoid confusion

and carry out the legislative intent, to the doctrine of repeals by implication.

But the concurrent existence and enforcement of the Denver act and the July law could produce no inconvenience or confusion; no conflict could arise in complying with their respective provisions; no one would ever attempt to enter any other town site under the Denver act; and the entry of the tracts of land specified therein, could in no possible way affect proceedings for patent in other cases, under the general law.

To avoid the foregoing conclusions we must say that the land specified in the Denver act was intended to be included by congress as one of the town sites mentioned in the July law; this would amount to a concession of the very point under discussion. If congress did not so intend, there can be no repugnancy or inconsistency between the two statutes; for in that event they do not refer to the same subject-matter. Unless we can find something else besides the so-called repugnancy itself of the two acts, which indicates a purpose on the part of congress to have the latter include the subject-matter of the former, we must hold that it does not do so. For, as already shown, all presumptions, in cases like this, are against recognizing this kind of repeals.

It is argued that on the 1st of July, 1864, congress had before it the whole subject of town site entries on the public domain; and that if it had been the intention to retain in force the Denver statute, such exception would have been expressly stated. It may be answered that the Denver act was passed at the same session, and only thirty-two days prior to the July law; hence, the presumption that congress had not forgotten its existence is especially strong; and it is reasonable to suppose that if congress intended to rescind so recent an enactment, it would have so declared in express words; this precaution was taken with reference to the general law of 1844,

in connection with which much less uncertainty could arise.

Nor does the statement that all inconsistent acts were repealed imply that congress had specially in view the Denver act. This provision is common in general statutes; it is inserted through an abundance of caution, and creates no necessary presumption that there are conflicting provisions. Besides, for aught we know, there may have been other general or special acts of congress which these words were designed to repeal.

The proposition has been announced, that "a general law does not operate as a repeal of a special law on the same subject, passed at the same session." *Ottawa v. La Salle County*, 12 Ill. 339; citing 4 Pike, 410.

This declaration must be accepted with the qualifications hereinbefore suggested; but the fact that at the same session of congress a special and a general law are enacted, justly strengthens the presumption against an intent to repeal, the prior special act not being specifically mentioned.

In view of the principles of law above noted, we are of opinion that there was no implied or express repeal of the Denver act. Under all the circumstances, we think the two statutes may stand together. We have no doubt but that the finding of the district court is right and should be affirmed.

If, however, the scales of judgment upon the questions above discussed were evenly balanced; and if there existed in our minds uncertainty as to the technically proper ruling in the premises, we would resolve the doubt in favor of affirmance. The patent which we are asked in this case to declare void with reference to the ground in controversy, covers upwards of nine hundred and fifty acres. The entry for this patent was made over nineteen years ago; upon the land conveyed thereby has since been constructed the most important part of the city of

Denver; with a few isolated exceptions, this instrument constitutes the first link in the chain of title relied upon. To hold the patent void as to the lot here in litigation, might, by unsettling title, impair the value of property worth millions of dollars. These circumstances render applicable principles, which, in a doubtful case, would most assuredly challenge consideration.

Holding, as we do, that so far as the objection here presented is concerned, the patent through which appellee claims is valid, no necessity exists requiring a discussion of the rulings as to the alleged rights or title of appellants. The judgment will be affirmed.

*Affirmed.*