## REYNOLDS v. LARKINS.

1. Appeals from judgments of justices of the peace in cases of forcible entry or unlawful detainer lie to the county court.
2. The territorial jurisdiction of justices of the peace in these actions is co-extensive with their respective counties.

*Error to County Court, Arapahoe County.*

THIS suit was brought before a justice of the peace under the forcible entry and detainer act. The premises sought to be recovered were not situate within the justice's precinct, nor was defendant a resident of such precinct. The cause of action, if any, accrued in another precinct, which had a duly-qualified and acting justice. Defendant made a special appearance, and moved to dismiss for want of jurisdiction over the subject-matter. The motion was overruled, default entered against de-

fendant, and the cause tried.  An appeal was then taken to the county court, and defendant renewed in writing his plea to the jurisdiction.  The county court allowed the plea, and dismissed the action.  From this judgment of dismissal the present appeal is taken.

Messrs. F. J. MOTT, HARMON and COVER, and MARK-HAM and DILLON, for plaintiffs in error.

HELM, J.  A preliminary question is fairly presented by the record before us, viz.:  Under our statutes relating to the subject, is there any appeal *to the county court* from judgments of justices of the peace in forcible entry or unlawful detainer actions?

Section 13 of the forcible entry and detainer act reads as follows: " Hereafter, in all cases of forcible entry and detainer, or forcible or unlawful detainer, tried or deter-mined in any county court, or before any justice of the peace, either party may take an appeal to the district court of the proper county in the same manner and dur-ing the same time that is now provided by law for tak-ing appeals from justices of the peace in other cases. * * * *" The act mentioned does not authorize an ap-peal in this class of cases from justices of the peace to the county court.  When the territory of Colorado be-came a state, the provision above quoted, having been previously enacted, continued in force.  It was incorpo-rated into the General Laws of 1877, and has remained without re-enactment to the present time.  In 1877 the legislature adopted a statute reading as follows: " All appeals from judgments of justices of the peace, both in civil and criminal actions, shall be taken to the county court of the same county, and no appeal shall lie from a judgment of a justice of the peace in any cause, civil or criminal, to the district court." Gen. Laws, § 1599; Gen. St. § 1978.

The question stated at the beginning of this opinion

resolves itself into the following:   Did the latter provision operate to repeal so much of section 13 of the forcible entry act as directs that appeals from justices of the peace, in actions under that act, shall be taken to the district court, and did it authorize such appeals to be taken to the county court instead ?

In the *first* place, we observe that the latter section is a subsequent statute, having been adopted several years after the passage of section 13 of the forcible entry act. *Secondly*, the act in which this section appears is an independent enactment.   It does not purport to be *amendatory* of any existing statute.   It is entitled "An act in relation to the jurisdiction of justices of the peace, and the practice in justices' courts."   The argument, therefore, that it was the intention to simply amend the act in relation to justices and constables, and that for this reason the provision in question should be applied alone to suits provided for in that act, is entitled to but little weight.   *Thirdly*, this provision, besides being expressed in general and comprehensive terms, *also contains negative words.*   It not only declares that "all appeals from judgments of justices of the peace, both in civil and criminal actions, shall be taken to the county court," but it also expressly asserts that "no appeal shall lie from a judgment of a justice of the peace in any cause, civil or criminal, to the district court."   The language used expresses a clear legislative intent to have all appeals in actions, *regardless of their nature*, thereafter taken from the justices to the county court.   The general character of the two statutes under consideration, and the repugnancy of their language, in so far as it specifies the court to which these appeals shall be taken, forbid an interpretation allowing the earlier to stand wholly unmodified; and, applying well-known rules of statutory construction, we must give an affirmative answer to the question propounded.   Sedg. St. & Const. Law, 96 *et seq.*, and notes; Potter's Dwar. St. 154 *et seq.*, and notes.

The right of appeal from judgments of justices of the peace in these actions remains by virtue of said section 13. The .repealing statute does not interfere with this right, or the procedure provided for its exercise. It simply changes the forum in which such appeals shall be tried, by substituting in relation thereto in the forcible entry provision the word "county" for the word "district."

The proposition that forcible entry and unlawful detainer causes are special proceedings, and not actions, we shall not consider at length. It is true they are statutory remedies, and it is also true that, in some respects, the prescribed procedure differs from that governing the ordinary civil action under the code. But they are referred to in that instrument (section 267) as actions, and are frequently thus named in the forcible entry act itself. Section 1236, General Laws, speaks of them as "the *action* of forcible entry and detainer, or unlawful detainer." Section 1248 reads: "Any *action* of forcible entry and detainer, or unlawful detainer," etc. Section 1249, referring to such causes, says: "In *actions* commenced before justices of the peace. * * *" We have no hesitancy in holding that these remedies are fairly covered by the word "actions," as used in section 1599, above considered.

We now pass to the principal question submitted for consideration. The objection under which this question arises challenged the jurisdiction of the justice of the peace over the *subject-matter*. It was therefore not waived by defendant's appeal to the county court. Section 1495 of the General Statutes, being section 9 of the forcible entry and detainer act, reads as follows: "The district courts in their respective districts, and county courts and justices of the peace in their respective counties, shall have jurisdiction of cases arising under this chapter. * * *" Counsel for plaintiff in error contend that this provision confers jurisdiction of cases under the

statute upon justices of the peace *throughout* their re-
spective counties.    There is no other provision in the act
mentioned that deals with the territorial jurisdiction of
justices of the peace.    And, were there no statute else-
where in any way relating to such jurisdiction, there
could hardly be two opinions upon the subject.    The
phrase "in their respective counties," considered by itself
alone, requires the interpretation given it by counsel.    In
fact, as we shall presently see, a similar phrase has been
practically thus construed by this court.

But it is insisted that section 1932 of the General Stat-
utes, which limits the jurisdiction of justices of the peace
to the townships in which they reside, must be construed
as applying to actions of forcible entry and unlawful de-
tainer.    In discussing this section, we shall assume that
the word "precincts" must be substituted therein for the
word "townships."    See section 146, chapter 23, General
Statutes.

So far as the two jurisdictional provisions under consid-
eration are concerned, no argument in favor of an implied
repeal or modification of section 1495 by section 1932 can
be based upon the ground that the latter is a subsequent
statute; for both sections were originally adopted, sub-
stantially as now existing, by the same legislature, and
both were approved by the governor on the same day.
Section 1932 is an amendment of the general act relating
to justices of the peace and constables,— the act which
treats of nearly all the various branches of jurisdiction
conferred upon justices; but which, however, does not
relate to or mention the actions of forcible entry and un-
lawful detainer.    The section consists of a single affirm-
ative declaration, with no negative words, and does not
even declare that *all* suits shall be brought in the precincts
specified.    The forcible entry and detainer statute is, on
the other hand, a separate and independent law, treating
solely of the actions indicated by its title.    Considering
the language of the two provisions, and the circumstances

attending their adoption, we cannot say that there is such
a repugnancy as requires us to hold that an implied repeal
of section 1495 took place, or that there existed in the
legislative mind any intent to change or modify that
provision.   The law does not favor repeals or modifica-
tions of this kind.   "They will not be adjudged to follow,
unless there is such a positive repugnancy that the two
statutes cannot consistently stand together.   The legis-
lative intent to substitute the new for the old law must
clearly appear."   *Schwenke v. Union Depot & R. Co.* 7
Colo. 512.

The view that section 1932 was not *intended* by the
legislature itself to repeal or modify section 1495 receives
strong confirmation from the legislative procedure in the
premises.   The territorial legislature of 1861 adopted an
act in relation to justices of the peace and constables.
Section 1 of this act reads: "Justices of the peace shall
have jurisdiction *in their respective counties* to hear and
determine all complaints, suits and prosecutions of the
following descriptions:   *   *   *"   Then follows a list
of nearly all the causes over which justices of the peace
are allowed to take cognizance.   There was in the stat-
ute of 1861 no other provision relating to the territorial
limits of the justices' jurisdiction.   At the succeeding
session, in 1862, the legislature adopted an act "amenda-
tory" of the foregoing.   Section 10 has come down to us
as section 1932 above mentioned.   It reads: "That suits
shall be commenced before justices in the township in
which the debtor or person sued resides, unless the cause
of action accrued in the township in which the plaintiff
resides, in which case the suit may be commenced where
the cause of action accrued or is specifically made pay-
able."   Sess. Laws 1862, p. 77; Gen. St. p. 620.

Under the act of 1861, "debtors were sued in tribunals
distant from their places of residence, and the cost and
vexation of litigation were thereby unnecessarily and op-
pressively increased.   As a security against this abuse,

this section (§ 10, Act 1862) was adopted, giving resident debtors a forum at their own doors." *Wagner v. Hallack*, 3 Colo. 176; *Denver, S. P. & P. R. Co. v. Roberts*, 6 Colo. 333. By enacting the precinct statute in 1862, the legislature unquestionably sought to curtail the territorial jurisdiction of justices of the peace conferred by the act of 1861. Thus it will be seen we have, in effect, both a legislative and a judicial declaration that the phrase, "in their respective counties," as used with reference to justices of the peace, conferred jurisdiction upon these courts *throughout* such counties. But at the session of 1862 the legislature also adopted a forcible entry and detainer act, in which the following language is used (sec. 5): " Justices of the peace, *in their proper counties*, and district courts in their respective districts, shall have concurrent jurisdiction in all cases arising under this act." Though changes have since been made in this statute, the above provision, so far as justices of the peace are concerned, has always remained substantially the same; and, as we have already declared, there has never been any qualification in the act itself of the territorial jurisdiction thus conferred.

The foregoing circumstances indicate strongly that the legislature did not intend to restrict to the justices' precincts the trying of actions in pursuance of the forcible entry and detainer statute; for it clearly appears that, while engaged in considering and passing the forcible entry law, that body not only interpreted the jurisdictional phrase used therein, but gave it an interpretation contrary to the supposed limitation. They specifically expressed this limitation as to all other actions before justices' courts; and the inference is irresistible, that, had they intended the limitation to apply to this class of actions, they would have so declared.

We feel impelled to the conclusion that it was the legislative intent to give justices of the peace an exceptional territorial jurisdiction in this particular class of cases, a

jurisdiction co-extensive with the areas of their respective counties.

The judgment of the county court is reversed.

*Reversed.*