[No. 7197.]

MONTEZUMA VALLEY IRRIGATION DISTRICT v. LONGENBAUGH.

1. STATUTES—*Construction*—In the construction of a statute all provisions pertaining to the same subject are to be taken together.

In construing the proviso to sec. 1, of the act for the organization of irrigation districts (Laws 1901, c. 87) the first proviso to section 2, that the county commissioners shall not modify the boundaries of a proposed district so as to exempt from the operation of the act any territory within the proposed boundaries "which is susceptible of irrigation by the same system of works applicable to other lands in such proposed districts"; as well as the second proviso in the same section that "any person whose lands are susceptible of irrigation from the same source shall, upon application to the board, be entitled to have his lands included in said district," are to be taken into consideration.

2. ESTOPPEL—*By Conduct*—Plaintiff sued to restrain the collection of irrigation district taxes upon certain lands, and for a decree that his lands were no part of the irrigation district. His complaint alleged, and the court found, that prior to the organization of the dis-

trict, and ever since, he was the owner of water rights sufficient for the irrigation of his lands, and which he had always since applied to this purpose; and that the district was not formed to acquire such water rights, and had not acquired them; upon account of which facts the plaintiff claimed that he was within the proviso to the first section of the act under which the district was organized (Laws 1901, c. 87).

But plaintiff, with full knowledge of the situation, had signed the petition for the organization of the district, which, as therein defined, included the land described in his complaint. During two years following the organization of the district he had paid irrigation district taxes upon said land. Without objection from him, proceedings had been taken, and a decree entered under the act, declaring the validity of the district, and confirming an issue of district bonds. The court were of the opinion that if plaintiff's lands had not been included within the district as proposed, he might, under the last proviso of section 2, have procured them to be included; that his signature to the petition was equivalent in effect to an application under this proviso, was a representation that his lands were such as might under the statute be so included, and a prayer for such inclusion; that the action of the board of county commissioners establishing the district was in the nature of a judgment; and that plaintiff by his conduct was estopped from afterwards denying, or bringing in question, the truth of his own representation upon which the board had taken action, especially in view of the fact that the district had contracted a large indebtedness to supply water to all the lands included therein.

A statute (Act 1901, c. 87) required, as the initiatory step for the organization of an irrigation district, a petition to the board of county commissioners, signed by a majority of the resident free holders who were qualified electors and owners of a majority of the whole number of acres belonging to resident electors, within the proposed district. *Held*, that one who has subscribed such a petition will not be permitted to afterwards dispute the facts therein asserted, even though his name is necessary to make up the required majority.

*Error to Montezuma District Court.*—Hon. CHARLES A. PIKE, Judge.

Mr. W. F. MOWRY, for plaintiffs in error.

Messrs. GOUDY & TWITCHELL and Mr. J. H. BURKHARDT, for defendant in error.

Mr. JUSTICE HILL delivered the opinion of the court:

This action involves the validity of certain irrigation district taxes upon certain lands included in an irrigation district, organized under our former irrigation district act entitled "An act to provide for the organization and government of irrigation districts," etc., approved April 12th, 1901.

Soon after the approval of this act, which contained an emergency clause, the defendant in error, in conjunction with many other landowners, signed and caused to be presented to the board of county commissioners of Montezuma county a petition praying for the organization of The Montezuma Valley Irrigation District. The boundaries of the proposed district as set forth in the petition included three hundred twenty acres of land owned by the defendant in error. The county commissioners duly considered the petition, made certain findings of fact, and, following the procedure prescribed by the act after the election therefor, declared the district as such duly organized under date of December 4th, 1901. Its boundaries as defined by the board included the above lands of the defendant in error. He paid irrigation district taxes upon them for the years 1904 and 1905. Prior to the institution of this suit, the district had contracted a large bonded indebtedness for a water system for the purpose of supplying the lands in the district with water for irrigation purposes. The regularity of the proceedings relative to the organization of the district and the issuance of the bonds (the evidence of this indebtedness) was duly confirmed by decree of the district court May 12th, 1906, as provided for by the act. No exception was taken to, or appeal from, this decree; no question is raised concerning the regularity of any of these proceedings.

Upon January 13th, 1909, which was more than seven years after the organization of the district, and more than two years after the date of the decree of confirmation, the defendant in error instituted this suit to restrain the district

board, the county treasurer, and the county assessor from levying and collecting irrigation district taxes upon these lands. He also prays the court to decree that they are no part of the district.

As grounds for this relief he alleges that prior to the organization of the district, and during all times since, he owned and possessed ditches previously constructed of sufficient capacity, and also owned sufficient water rights for the irrigation of this land, which he has ever since been using for the irrigation of all of it, with the exception of about ten acres. He also alleges, and it is conceded, that the district was not organized or formed to purchase, acquire, lease or rent the plaintiff's alleged ditches or water rights, and that it has never made purchase of any of them.

Numerous defenses were presented. The relief prayed for was granted, save and except as to ten acres. The defendants bring the case here for review upon error.

Section 1 of the Irrigation District Act of 1901, p. 198, reads:

"Whenever a majority of the resident freeholders owning lands in any district susceptible to one mode of irrigation from a common source and by the same system of works, desire to provide for the irrigation of the same, they may propose the organization of an irrigation district under the provisions of this act, and when so organized, each district shall have the powers conferred or that may hereafter be conferred by law upon such irrigation district. *Provided,* That where ditches, canals or reservoirs have been constructed before the passage of this act of sufficient capacity to water the land thereunder for which the water taken in such ditches, canals or reservoirs is appropriated, such ditches canals, reservoirs and franchises and the land subject to be watered thereby shall be exempt from operation of this law, except such district shall be formed to make purchase of such ditches, canals, reservoirs and franchises, and that this law

shall not be construed to in any way affect the rights of ditches, canals and reservoirs already constructed."

It is claimed that the lands of the defendant in error come within the proviso in the above section and are therefore exempt from the operation of the act, the district not being formed to make purchase of the ditches, etc., in existence at the time of its organization, used for the irrigation of this land. There is evidence concerning previous ditches, their enlargement since the organization of the district, also evidence concerning what is termed private water rights used in the irrigation of a portion of this land. It is conflicting. If this was the only question raised, it might be proper to sustain the judgment, but a more serious difficulty confronts us.

The defendants plead and introduced evidence to sustain an estoppel. It has universally been held in the construction of a statute that all matters therein pertaining to the same subject should be considered in connection with each other. This rule is especially applicable here for the reason that when the different sections and provisos in this act are read separately and thus considered literally, they cannot be harmonized, but are in conflict and inconsistent with each other. Section 2 provides that a petition shall be filed with the board of county commissioners which embraces the largest acreage of the proposed district, signed by a majority of the resident freeholders who are qualified electors of the proposed district, who shall also own a majority of the whole number of acres belonging to the resident electors of the proposed district; that the petition shall set forth and particularly describe the boundaries of the district, and shall pray that the lands included therein be organized into an irrigation district under the provisions of the act. Also, that when the petition is presented, the board of county commissioners shall hear it, and on the final hearing may make such changes in the proposed boundaries as they may find to be proper, and shall establish and define the boundaries, provided that said board shall not modify said boundaries *so as to exempt from operation of the*

*act any territory within the boundaries of the district pro-
posed by said petitioners, which is susceptible of irrigation by
the same system of works applicable to the other lands in such
proposed district;* nor shall any land, which will not in the
judgment of said board be benefited by irrigation by said sys-
tem, be included in such district. Another proviso in this sec-
tion states, *"That any person whose lands are susceptible of
irrigation from the same source shall, upon application of the
owner to said board, be entitled to have such lands included
in said district."* Sections 9 and 10 provide what the board
can do in securing sundry systems of water works, etc., for
the irrigation of the lands in the district, etc. Section 13, for
the issuance of bonds, etc. Sections 29 to 38, inclusive, pro-
vide for changing the boundaries of the district after its or-
ganization, and allowing, under certain conditions, contiguous
territory to be included therein.

It is admitted that the defendant in error voluntarily
signed the petition for the organization of the district; that
the petition set forth the boundaries of the proposed district,
which embraced therein the three hundred twenty acres of
land in question; that when he signed it he was the owner
of this land and that he knew the contents of the petition. He
thereby prayed that the proposed district as then defined,
which included this land of which he was then the owner, be
organized into an irrigation district under the provisions of
this act. Thereafter, during the years 1904 and 1905 he paid
irrigation district taxes thereon and thereby again recognized
the proper inclusion of these lands in the district.

It also appears that in 1906 proceedings for the approval
of the validity of the district and the confirmation of certain
bonds were had and became final to which he made no objec-
tions, although the regular statutory notices were given of
these matters, yet not until over two years thereafter, and until
after a large indebtedness had been contracted by the district
for the purpose of supplying the lands therein with water for
irrigation purposes, did he take any steps to have his land de-

clared exempt from the operation of the law. It will be observed that the proviso in section 1 of the act exempting certain lands from its operation depends upon certain questions of fact, namely, that ditches, canals and reservoirs have been constructed before the passage of the act; that they have sufficient capacity to water the land thereunder for which the water taken in such ditches, canals and reservoirs is appropriated, provided further, except such district shall be formed to make purchase of such ditches, canals, reservoirs and franchises.

When the defendant in error signed the petition for the organization of this district he knew, as he admits, the actual facts concerning his land, the ditches and waters therefor, if any; yet regardless of these facts which he now states existed, he prayed that an irrigation district be organized to include them. This petition was an allegation, as well as an admission by him, that this land was such as could properly be included in such an irrigation district (not being formed to make purchase of any ditches or waters then owned by him) and also as the owner that he desired it included. Under the last proviso in section 2 of this act, had his land not been included in the proposed irrigation district, yet was susceptible of irrigation from the same source (a fact here admitted), upon application to the board, he probably would have been entitled to have had it included in the district. His signing the petition and thereby praying for the organization of a district to include the lands named then owned by him, was the same in substance as a statement therein by him that this land was such as could be, and a prayer that it be included in the district. The commissioners having acted favorably upon his request, their action is in the nature of a judgment and the facts as then represented by him upon which they acted are not thereafter open to attack by him. In this respect he is estopped from thereafter making claim to a different state of facts than his previous acts would imply.

In Vol. 16, Cyclopedia of Law and Procedure, at page 796, it is said, "A party who has, with knowledge of the facts, assumed a particular position in judicial proceedings is estopped to assume a position inconsistent therewith to the prejudice of the adverse party." At page 799, it is also said, "A claim made or position taken in a former action or judicial proceeding will estop the party to make an inconsistent claim or to take a conflicting position in a subsequent action or judicial proceeding to the prejudice of the adverse party, where the parties are the same, and the same questions are involved." At page 801, the author further states, "If in a particular transaction or course of dealing the authority, capacity, character, or status of one of the parties is recognized as one of the basic facts on which the transaction proceeds, both parties are as a rule estopped to deny that the one occupied that position or sustained that character." The above general rules are sustained by both reason and authority. We think they are applicable here. The authority of the board to include this land which rested upon a certain state of facts was not only recognized by the plaintiff, but with knowledge of all facts he assumed that it was such as would give the board jurisdiction over it; by his actions he took a position in harmony therewith, and by his signed petition prayed that the board act accordingly. Under these circumstances he ought not now be heard to say that the facts are different than what his former petition would imply, and for which reason that the board was without jurisdiction to do what he had previously prayed them to do.

Under one of the provisos in section 2 of the act, if omitted, he probably could have had his land included in the proposed district by presenting his individual petition to the board for that purpose, the land being susceptible of irrigation from the same source. If such a petition had been presented, and the board had included his land, under such circumstances could it be consistently urged (after the district had contracted a large indebtedness with which to supply water for all the

lands, including that in question) that he could then be heard to say that the facts were lifferent than what his former petition would imply, and for which reasons his lands were not a part of the district? We do not think so. We see no difference, in substance, between the signers of the two petitions. The first is to secure the organization of the district to cover the lands therein named of which the signers of the petition are the owners of a majority of the acreage. The second is to allow the signer to have his land included as a part of the proposed district, if he so desires, although not included in the original petition.

Section 2 provides that the original petition shall be signed by a majority of the resident freeholders who are qualified electors of the proposed district, who shall also own a majority of the whole number of acres belonging to the resident electors of the proposed district. Assuming, *arguendo*, that the name of the defendant in error was necessary to be counted to make a majority of the resident freeholders who are qualified electors, or was necessary to be counted as one of those owning a majority of the acreage of the proposed district, and that this land was necessary to be included for that purpose, under such circumstances it has repeatedly been held that the signer will not be allowed to thereafter dispute such questions of fact.—*Beaver Borough v. Davidson*, 9 Penn. Sup. Ct. 159; *Ferson's Appeal*, 96 Penn. St. 140; *Lake City v. Fulkerson*, 98 N. W. (Iowa) 376; *Bidwell v. City of Pittsburgh*, 85 Penn. St. 412; *Dewhurst v. City of Allegheny*, 95 Penn. St. 437; *Broad Street Church's Appeal*, 165 Penn. St. 475; *Matter of Cooper et al.*, 93 N. Y. 507; *Burlington v. Gilbert*, 31 Iowa, 356; 7. Am. & Eng. Ency. of Law, p. 20, Notes; *Pepper v. City of Philadelphia*, 114 Penn. St. 96; *McKnight v. City of Pittsburgh*, 91 Penn. St. 273.

We think that the reasons and rules announced in the above cases are applicable here, and that the facts and circumstances of this case justify the application of the principle of

estoppel.   This makes unnecessary any consideration of the other reasons urged for a reversal of the judgment.

For the reason stated the judgment is reversed and the cause remanded with instructions to dismiss the action at the costs of the plaintiff.                                      *Reversed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE GABBERT concur.