Board of Regents University of Colorado Boulder, Colorado 80302
Dear Members of the Board:
In reviewing the brief proposed to be filed in the case of theAssociated Students of the University of Colorado v. The Regents of theUniversity, now pending before the Colorado Supreme Court, I have come to the conclusion that it is erroneous as a matter of law and assumes legal positions that are not tenable. I am therefore recommending to the Board that the appeal not be prosecuted further, and I herewith submit an official opinion of the Attorney General for your guidance.
QUESTION PRESENTED AND CONCLUSION
Does the Sunshine Act apply to the Board of Regents so as to prevent the Board from holding closed sessions?
 My conclusion is "yes." The Sunshine Act applies to the Board of Regents, and closed sessions of the Board would be in violation thereof. This opinion does not supercede the conclusion reached in Attorney General's Opinion #73-0042 nor that portion of Opinion #73-001 concerning the attorney-client privilege. It does supercede Opinion #73-0014.
ANALYSIS
First, it is imperative to examine the provisions of the Colorado Constitution relating to the Board of Regents. Prior to 1972, Section 14
of Article IX of the Colorado Constitution gave a specific grant of authority to the Board:
 The Board of Regents shall have the general supervision of the University, and the exclusive control and direction of all funds of, and appropriations to the University.
In 1972, Section 14 was repealed and subsection (2) of Section 5 of Article IX was added, which reads as follows:
 The governing boards of the state institutions of higher education, whether established by this Constitution or by law shall have the general supervision of their respective institutions and exclusive control and direction of all funds of, and appropriations to their respective institutions, unless otherwise provided by law.
Prior to the 1972 Amendment, it was questionable whether the State Legislature could, in view of the specific constitutional grant to the Board, enact legislation affecting the Board of Regents. The effect of the amendment was to remove the Board from the special status created by Section 5 and place it in a general class consisting of "the governing boards of institutions of higher education." Such boards have general
supervision of their respective institutions, "unless otherwise provided by law." These changes reveal an intent to make the Board of Regents susceptible to enactments of the General Assembly.
Additionally, the following portion of subsection (1) of Section 5, Article IX is authority for the proposition that educational institutions are subject to legislative enactments:
 The establishment, management, abolition of the state institutions shall be subject to the control of the state, under the provisions of the Constitution and such laws and regulations as the general assembly may provide;
Second, the argument that the Sunshine Act does not apply because it does not specifically mention the Board of Regents or boards of higher education is without substantial merit. It is based on the proposition that general legislation cannot repeal or affect special legislation. As stated above, it is my opinion that the status of the Board of Regents was substantially altered by the 1972 Amendment placing it in a general class. Thus, it no longer exists pursuant to "special legislation" which would render it unaffected by general legislation.
The proposition that the phrase "unless otherwise provided by law" requires special legislation is tenuous. If in fact that were the intent of the Legislature, it could have been more effectively stated through the use of the common phrase "unless otherwise expressly provided by law." (Emphasis added.)
Even if the Board were still considered to be constituted by "special legislation," it would not necessarily follow that it would be unaffected by "general legislation." The Colorado cases approaching the issue deal with situations where there exists specific conflict between two statutes or constitutional provisions.Schwenke v. Union Depot and RailroadCompany, 7 Colo. 512, 4 P. 905 (1884); Harrington v. Harrington,58 Colo. 154, 144 P. 20 (1914); People v. Field, 66 Colo. 367 (1919). Thus, while these and other cases hold that general legislation does not repeal special legislation, they were concerned with situations where there was a conflict between two statutes or constitutional provisions dealing with the same specific proceedings or subject matter.People v. Field, supra, concerned Section 9 of Article IX of the Colorado Constitution, which provided for the appointment of three persons by the governor to the State Board of Land Commissioners. In 1918, Section 13 of Article XII of the Constitution, generally known as the Civil Service Amendment, was adopted. The Civil Service Amendment was a general law dealing with the appointment of all state officers with certain exceptions. The Court reconciled the apparent conflict between the two provisions by holding that Section 9 of Article IX was a specific and special provision and thus would stand in the face of the general Civil Service Amendment. It is important to note that in this case the two provisions were dealing with the same subject, the appointment of state officials, and that there was a conflict on the face of the two provisions. The case at hand would be comparable if, for instance, there was a constitutional or statutory provision providing for closed sessions of the Board under certain circumstances. There is, of course, no such conflict in this case, and thus these cases and their reasoning are not applicable to the issue at hand.
Third, the rules concerning "special" and "general" legislation are rules of statutory interpretation and construction, and such rules are relevant only when there is a conflict or ambiguity. They do not apply where the meaning of a statute is clear. City of Montrose v. Niles, 238 P.2d 875,124 Colo. 535 (1951); People ex rel. Park Reservoir Co. v. Hinderlider,98 Colo. 505, 57 P.2d 894 (1936); Goldy v. Crane, 167 Colo. 44, 445 P.2d 212
(1968). And a conflict between two provisions cannot be raised by implication. Montezuma Valley Irrigation Dist. v. Longenbaugh, 54 Colo. 391,131 P. 262 (1913). Rules of statutory construction are subordinate to the legislative intent where such is made to plainly appear.Robinson v.Colorado, 155 Colo. 9, 392 P.2d 606 (1964).
Turning to the Sunshine Act, the relevant portion reads as follows:
 24-6-401.Declaration of Policy. It is declared to be a policy of this state that the formation of public policy is public business and may not be conducted in secret.
 24-6-401.Meetings — Open to Public.(1) All meetings of two or more members of any board, committee, commission, or other policy-making or rule-making body of any state agency or authority or of the legislature in which any public business is discussed or that which any formal action is taken by such board, committee, commission or other policy making or rule making body are declared to be public business open to the public at all times, except as may be otherwise provided in the Constitution.
The Sunshine Act is unambiguous, and there is no apparent conflict with Section 5 of Article IX to justify invoking rules of interpretation and construction which would work a major exception to the Sunshine Act."All" and "any" are inclusive words, and their meaning is clear on their face. In People v. Horkans, 109 Colo. 177, 123 P.2d 824 (1942), the court said:
 We cannot, under any rule of statutory construction, read into a statute a meaning different from that which clearly appears from the wording of the act.p. 180.
A legitimate guide to the determination of the intent of an act is the declaration of policy at the beginning of the enactment. St. Luke'sHospital v. Ind. Comm., 142 Colo. 28, 32, 349 P.2d 995 (1960). The declaration of policy of the Sunshine Act makes it clear that it was designed to remedy the evil of conducting public business in private.
 The intent of a statute is the law. The cardinal rule of statutory construction is to discover and enforce its intent.Richardson v. El Paso Consolidated Gold Mining Co., 51 Colo. 440, 118 P. 982 (1911).
To interpret the Sunshine Act so as to deny or limit its applicability, when there is no clear conflict or ambiguity, would, in my opinion, be plainly contrary to the intent of the law, as initiated by the people. Courts of law have no authority to add an important qualification or exception to a statute. Estate of Bourquin Weiss v. Salvation Army,84 Colo. 275, 269 P. 903 (1928).
In addition, the phrase "except as may be otherwise provided in the Constitution" can be reasonably interpreted to mean that only specific constitutional provisions providing for closed meetings were or will be excepted from the provisions of the Act.
Fourth, it was apparently the position of the Board in the lower court that the Sunshine Act applied in general to the meetings of the Board of Regents but that in certain circumstances, to be decided by the Board, it would not apply. Thus, pursuant to 23-20-112, C.R.S. 1973, the Board enacted a law or regulation specifying the circumstances under which closed meetings could be held. This position is untenable because by implication it holds that the rule-making power of the Board supercedes and regulates the application of the Sunshine Act. Theoretically, at least, under this reasoning, the Board could determine the applicability or inapplicability of any statute which it considered to be general legislation. The Board would only have to find that the application of the statute would adversely affect the Board's powers of supervision and the public interest. The proposition that the legislature in granting a corporate body the power to enact regulations by implication granted that body the power to determine when and if certain statutory provisions would be applicable is an indefensible legal position.
Fifth, if the Board of Regents has the power to decide when the Sunshine Act applies and when it doesn't, then all governing boards of the institutions of higher education would have such power since they are all in the same constitutionally created class. Thus, every such board, with no standards and no guidelines, could hold closed sessions by stating that it would be "adverse to the public interest" to have them open. Not only would this result in chaos, unpredictability, and a lack of uniformity, it would also appear to be directly contrary to the intent of the Sunshine Act.
Sixth, the theory that since the Board of Regents is created by the Constitution, only special legislation applies to it, if upheld, would be an invitation to every similar constitutionally created body to avoid the Sunshine Act or other disagreeable general legislation. For example:
 (1) Section 10 of Article IX of the Colorado Constitution states that:
 It shall be the duty of the State Board of Land Commissioners to provide for the location, protection, sale or other disposition of all the lands . . . granted to the State by the government, under such regulations as may be prescribed by law . . . .
(2) Section 1 of Article IX states that:
 The general supervision of the public schools of the State shall be vested in a board of education whose powers and duties shall be as now or hereafter prescribed by law.
 (3) Article XXV grants the power of regulating service and rates and charges to the Public Utilities Commission.
Thus, these boards and commissions could likewise argue that the Sunshine Act or other disagreeable general legislation would not apply to them to the extent that it interfered with their constitutional grant of power and authority. It would be clearly unreasonable to so emasculate legislative prerogatives by reading unlimited discretion into the grant of constitutional status. In particular, the history of the 1972 referred amendment to Article IX shows no such intent.
I understand the difficulties that the application of the Sunshine Act creates, but it is the function of the Attorney General to interpret the law as it is, and not as it might or should be.
 The policy of the law may or may not be a wise one . . . . If the law requires to be remedied, that is a question for the legislature. Chicago Co. v. Patterson, 65 Colo. 534, 178 P. 13 (1918).
SUMMARY
For the above-stated reasons, it is my opinion that the Sunshine Act applies to the governing boards of higher education, and thus closed sessions by the Board of Regents would be in violation thereof.

 Very truly yours,
 J.D. MacFARLANE
 Attorney General
OPEN MEETINGS
EDUCATION, HIGHER

C.R.S. 1973, 24-6-401 C.R.S. 1973, 23-20-112
Colo. Const. art. IX, § 5
HIGHER EDUCATION, DEPT. OF University of Colorado
The Sunshine Act applies to governing boards of institutions of higher education, and therefore, meetings of such boards must be open to the public unless otherwise permitted by the Act.