[No. 4160.]
JAIN v. BOSSEN.

1. DOMICILE—RESIDENCE.

The distinction between a mere residence and a domicile is that a residence in law is used to designate the place where a person dwells, while the domicile is the legal home of a person, or that place where the law presumes that he has the intention of permanently residing although he may be temporarily absent.

2. DOMICILE—ABANDONMENT—INTENTION.

When one has acquired a domicile, he must abandon it before he can gain another.   To effect such a change there must be a severance from the old place with the intention of uniting with the new, and these must concur.   A mere change of residence is not sufficient to acquire a domicile elsewhere unless it is intended to be permanent. Absence for a temporary purpose does not result in an abandonment of a domicile.

3. SAME—TEMPORARY ABSENCE—ELECTIONS.

Where a man and his wife had acquired a domicile in a town and a short while before election they removed to another place, where the man had a contract to work on a mine, with the intention of residing there till the contract was finished, and during the time left their home in the town with part of their furniture in the care of another, they had not abandoned their domicile and were legally entitled to vote at an election in the town of their domicile occurring during the time of their residence at the place of the contract.

4. ELECTIONS—QUALIFICATION OF VOTERS—LAW MANDATORY.

The requirements of the law on the qualification of electors are mandatory and must be strictly observed.

5. SAME—DOMICILE.

The mere personal presence of a person, otherwise qualified, in a voting precinct for the period required by law, does not constitute such person a legal voter in the precinct, unless he has moved in with the honest and settled intention of acquiring a domicile in the precinct.

6. ELECTORS—ELIGIBILITY TO HOLD OFFICE.

One who is not a qualified elector of a town is ineligible to hold the office of trustee of the town.

7. ELECTIONS—CHANGE OF DOMICILE.

Where a man living with his wife on a ranch in the country accepted employment as manager of a mine outside but near a town, and took a room at a hotel which he testifies he intended as his home until he could secure a home for himself and wife in the town, although he sometimes slept at a cabin at the mine, and in the mean time he occasionally visited his wife at the ranch where he had arranged for her to remain until they could dispose of their place and stock when they intended she should join him and make the town their permanent residence, he acquired a new domicile at the hotel and was a qualified elector and eligible to the office of town trustee at an election occurring long enough after his removal to the hotel to qualify him under the statute but before the removal of his wife.

*Error to the County Court of Boulder County.*

Mr. JAMES D. MERWIN and Mr. GUY D. DUNCAN, for plaintiff in error.

Mr. JOHN W. HELBIG, for defendant in error.

MR. JUSTICE GABBERT delivered the opinion of the court.

The contest in this case is over the office of trustee for the town of Ward. The canvassing board determined that defendant in error received 167, and plaintiff in error 131 votes. The latter brought this action to contest the election of his opponent. From a judgment in favor of contestee, contestor brings the case here for review on error. In his statement he charges that fifty persons, whom he names (including contestee), and who cast their votes for the latter, were illegal voters. On the trial it was admitted that eleven of the persons so named were qualified to vote. Of those remaining, (exclusive of contestee), the court found that twenty-six were qualified electors, which gave contestee a majority of twenty-three votes. The court also found that contestee was a legal voter, and as he voted for himself, his majority was increased to twenty-four. The two important questions pre-

sented are, (1) were a sufficient number of the twenty-six persons whom the court found to be legal voters in fact qualified electors, so as to give contestee a majority over his opponent; and (2) was contestee himself a qualified elector of the town of Ward?

On behalf of plaintiff in error, it is contended that each of these questions should be answered in the negative. If three of the twenty-six were legal voters, it would result in giving contestee a majority of one. Two of the persons charged in the statement as having voted for contestee, and whom it was claimed were not qualified electors, were L. L. Grover and wife. The court found that they were qualified to vote, and included them in the list of twenty-six. The evidence regarding the qualifications of these persons was to the effect that within about two months prior to the election, they had lived in the town of Ward continuously for upwards of five years; that Mr. Grover had a residence there which they occupied; that about two months before the election, he had taken a contract on a mining property at a place known as Wall Street; that his wife accompanied him to that place; that he did not rent his house in Ward, but left it and part of his furniture there in charge of a Mr. Blakely; that when this contract was completed, which was about the first of May succeeding the election, they both returned to Ward and occupied their residence at that place. On this evidence the trial court was clearly right in concluding that these parties were qualified electors in the town of Ward. Their domicile was at that place. The distinction between mere residence and domicile must be borne in mind. The former is used in law to denote that a person dwells in a given place; the latter is the legal home of a person, or that place where the law presumes that he has the intention of permanently residing, although he may be absent from it. Rapaljae & Lawrence's Dictionary.

When one has acquired a domicile, he must abandon it before he can gain another. To effect such a change, there must be both act and intention; in other words, there must

be a severance from the old place with the intention of uniting with the new one, and these must concur. *Kellogg v. Hickman*, 12 Colo. 256.

A mere change of residence is not sufficient to acquire a domicile elsewhere, unless it is intended to be permanent. In all such cases it is the intention which is to control, so that a mere temporary absence for a temporary purpose does not result in an abandonment of a domicile. *Kellogg v. Hickman, supra;* 10 Ency. of Law (2d ed.), 600.

Grover and wife had only left Ward for a special purpose; there was no evidence whatever from which it could be inferred that they intended to abandon their residence in that town; on the contrary, the evidence was conclusive that they expected to return as soon as the object for which they left was accomplished. Under such a state of facts, they had not acquired a domicile at Wall Street, and therefore could not have lost the one at Ward.

The court also found that John Crimmins and wife were legal voters, and they are included in the list of twenty-six. The evidence of Crimmins is to the effect that he and his wife went to Wall Street about the same time that the Grovers did, Mr. Crimmins going there to do contract work. They had both resided in Ward a year and nine months prior to this time. They took part of their furniture to Wall Street, and left the remainder at Ward, because they intended to return to that place as soon as the contract was finished, which, after the election, they did. There is some evidence to contradict that given by Crimmins, but as the trial court found that these parties were qualified electors, on testimony which, in some respects, was contradictory, we are not at liberty to disturb the findings of fact necessarily made. Under the authorities and the reasons given in holding that Grover and wife were qualified electors, it is unnecessary to rediscuss this question on the evidence submitted below, as it is sufficient to sustain the conclusion of the trial court, that Crimmins and his wife were legal voters. The conclusion that Grover and wife and Crimmins and wife were legal

voters gave contestee a majority of two over contestor, and it therefore becomes unnecessary to determine whether all or part of the remainder in the list of twenty-six were qualified electors, as, whatever our conclusion might be on this subject, would not change the result. We notice, however, in this connection, that the record discloses circumstances well calculated to cast a doubt upon the good faith of some of these parties, who moved to Ward barely a sufficient length of time before election to comply with the provisions of the law relative to residence. The requirements of the law on the qualifications of electors are mandatory, and must be strictly observed. They are intended to prevent the colonization of voters within any particular political division. Election officers should strictly enforce the law which is intended to prevent illegal voting. The mere personal presence of a person otherwise qualified in a voting precinct for the period required by law, does not necessarily constitute such person an elector, unless he has moved in with the honest and settled intention of acquiring a new domicile.

The next question presented is, whether or not contestee was a qualified elector. It is necessary to determine this, for the reason that if he was not, he could not hold the office of trustee. The determination of this question depends upon the evidence bearing on the subject of his residence in the town of Ward. Prior to September 12, preceeding the election, he had resided with his wife on the St. Vrain, where he appears to have established a home. On September 12, he came to Ward, and accepted employment as foreman on a mine situate partly within the limits of the town. He claims to have taken up his residence at the Utica Hotel, located in Ward. In support of this claim, he introduced evidence to the effect that he maintained a room there and took part of his meals at that place. Part of the time he appears to have slept at a cabin at the mine outside of the corporate limits, and took some of his meals at the mine. He left his wife on the St. Vrain, to care for the stock, but states that it was arranged that as soon as they disposed of their place

and stock it was their intention that she should also move to Ward. She did not, in fact, make the move, being prevented, as he claims, by bad roads, and on account of their failure to make the disposition of their property on the St. Vrain as anticipated. He visited her from time to time at this place. He disposed of some stock and made inquiries about getting a home in Ward as a residence for himself and wife, and states that prior to his nomination it was his *bona fide* intention to make Ward his permanent residence. This evidence is practically undisputed, except in some minor particulars; but conceding that it is controverted, the question for us to determine, is, whether or not it is sufficient to support the judgment of the trial court, that contestee was a qualified elector of the town of Ward at the time of the election.

This question presents two propositions: (1) did contestee acquire a new domicile; and (2) if so, where? According to his testimony he had actually removed from his residence on the St. Vrain, with the intention of abandoning it, and acquiring one at Ward, so there had been a concurrence of the act of severance from the old place and the intention of uniting with the new one, which, under the authorities above cited, constitutes and is the test to apply for the purpose of determining the question of a change of domicile. It is urged that because of the fact that the wife remained on the St. Vrain, and that contestee had removed none of his property to Ward, except necessary wearing apparel, that he cannot in law be heard to say that he had changed his domicile. These circumstances are persuasive, but not conclusive. Every case of this character must depend upon its own peculiar circumstances. What constitutes a change of domicile in the abstract is a question of law, but whether it has been effected in a given case must depend upon the facts. The evidence considered by the trial court is sufficient to support the findings of fact from which the trial court deduced the conclusion that contestee had actually changed his residence from the St. Vrain, and these findings will not be disturbed. He states that as between the cabin at the mine and his room

at the hotel, he made the latter his headquarters, and regarded that as his home. Which of these places was his domicile was within his power to elect. He was actually present at the hotel much of the time when not engaged on the mine, and being there with the intention of making it his domicile, would constitute it such in law. We conclude, therefore, that he was a qualified elector of the town of Ward, on the date he was elected a trustee of that municipality.

Many errors are assigned and argued on the rulings of the court with respect to the admission and rejection of testimony, which we do not think it is necessary to notice in detail. So far as these rulings related to evidence received or rejected, bearing upon the legal qualifications of the four persons whom we have found were qualified electors, there was no prejudicial error, and as to others, it is immaterial, for whether these rulings are right or wrong, they only affected the *status* of those voters whose qualifications it is unnecessary to consider.

It being clear that contestee was elected by a sufficient number of legal votes to give him a majority, the judgment of the trial court must be affirmed. The costs in this court will be taxed to the plaintiff in error.

*Judgment affirmed.*