No. 14,976.

PEOPLE EX REL. KNOTT *v.* CITY OF MONTROSE ET AL.

(126 P. [2d] 1040)

Decided June 1, 1942.   Rehearing denied June 22, 1942.

Mr. L. C. KINIKIN, for plaintiff in error.

Mr. HERBERT L. STRANG, MESSRS. MOYNIHAN-HUGHES, for defendants in error.

*En Banc.*

MR. JUSTICE BOCK delivered the opinion of the court.

A special election was held March 25, 1941, at Montrose, Colorado, for the purpose of determining whether the Western Colorado Power Company, a public utility,

one of defendants in error, should be granted a ten-year franchise to furnish light and power in said city. On the face of the returns, the granting of a franchise was authorized by a majority vote of 98. Plaintiff in error, contending on several grounds that the election was illegal, filed a complaint in the district court of Montrose county to have the same declared null and void. The public utility filed two motions: one to strike certain portions of the complaint; the other, to dismiss the action, as to both of which the trial court made no ruling. The city filed a motion for summary judgment, based upon Rule 56 (b), R. C. P., Colo. All parties agreed to the disposition of this controversy on this motion. The trial court found in favor of defendants in error and entered judgment dismissing the action and complaint.

Since all parties agreed to the disposition of the case under Rule 56 (b), supra, the question whether the procedure adopted was proper is not now before us. Under the circumstances, it also is immaterial whether the action be designated as an election contest or a suit in equity. For the purpose of this opinion, we may assume that there were some irregularities, none of which, however, in degree or nature, in any manner affected the result of the election, with perhaps one exception. This exception is contained in the fifth specification of points presented by plaintiff in error and is as follows: "Fifth —The findings, conclusions of law, and judgment are not warranted upon any hypothesis, it having been alleged, and admitted by motions for insufficiency, that 340 and 5 persons voted without being duly and legally registered for said special election; which fact is also admitted by two of defendant City's affidavits and by two of ours."

First, what are the facts as to the votes of the five persons? Section 2, chapter 22, of the ordinances of the City of Montrose, provides: "Between the fourth day preceding any such municipal election and noon of

the day before any such election the City Clerk shall cause to be made a true list of all the electors so registered up to and including said fourth day before election, with the address of such electors, and such list shall be certified to by the City Clerk or the County Clerk as a true list of such electors and shall by the City Clerk be delivered to two of the Judges of election between noon and five o'clock P. M. of the day before any such municipal election and such list shall be the registration list for use at such election and by which the Judges of such election shall be governed." The city clerk complied with this section, except that on election day she certified the five persons in question to the registration list of electors, because, though duly registered, through error their names had not been placed on the list. It is doubtful whether this procedure on election day was proper. Section 212, chapter 59, '35 C. S. A. Be that as it may, however, the addition of those five names to the list in no manner affected the result of the election, and the error, assuming it to be such, was not of such degree as to warrant a legal declaration that the election was null and void. *Baldauf v. Gunson*, 90 Colo. 243, 8 P. (2d) 265.

The facts as to the alleged 340 illegal votes present a different problem. Only taxpaying electors of Montrose are qualified to vote at a franchise election. Article VIII, section 70, Montrose charter. Montrose is a home-rule city under article XX of the Constitution of Colorado. The city clerk furnished two lists to the election judges: (1) A list of the taxpayers of Montrose, which was supplied by the county treasurer from his books; (2) a list of all registered electors as provided by charter section 2, chaper 22, supra. List number one originated from a procedure outlined and approved by the attorney general in collaboration with counsel for the public utility in an election held in 1939. Nothing we here say should be considered as an approval of this procedure. It has no basis in law, but, as

is asserted, was intended as a convenience to the election officials. The contention of counsel for plaintiff in error, that this list of taxpayers also is required by section 2, chapter 22, is without merit. This section applies only to an electors' registration list. None of the persons casting the 340 votes involved was on list number one. All were on list number two. A prospective elector, not being on list number one, but on list number two, was permitted to vote if he executed an affidavit in the following form:

"You do solemnly swear (or affirm) that in the year 1940 you paid a tax or were liable for the payment of a tax upon real or personal property owned by you and located in the City of Montrose, County of Montrose, State of Colorado.

"Dated at City Hall, Montrose, Colorado, March 25, 1941.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Subscribed and sworn to before me March 25, 1941.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Judge of Election."

As already noted, this affidavit, or oath, was not in lieu of the electors' registration list, but related solely to the taxpaying qualifications of those seeking to vote in the franchise election. The basis for this affidavit is found in section 17, chapter 59, '35 C. S. A., which reads as follows: "The term 'taxpayer,' 'taxpaying elector' or 'qualified taxpaying elector' shall be held to mean and include only those persons who are qualified voters under the registration and election laws of this state and who, in the calendar year last preceding the election at which such vote is offered, shall have paid a tax, or be liable for the payment of such tax upon real or personal

property assessed to them and owned by them in the county where such vote is offered. And the taking or placing of the title to property in the name of another, or the payment of taxes or the taking or issuing of a tax receipt in the name of another, for the purpose of attempting to qualify such person as a 'taxpayer' or as a 'taxpaying elector' or as a 'qualified taxpaying elector' shall be deemed a fraud against the ballot and any ballot cast by such person shall be void."

The contention of counsel for plaintiff is that the language of the section just quoted, designating qualified taxpayers on property "assessed to them and owned by them," is in the conjunctive, and that this designation of the qualification of a taxpaying elector is not contained in the above form of oath. There is merit in this contention, and we assume, for the purpose of the present discussion, that the affidavit in that respect is erroneous. Like list number one, the procedure by oath has no legal basis. None of the 340 votes was challenged. If the voters were in fact taxpayers within the meaning of section 17, supra, unless challenged, they had a right to vote, even though they were not on list number one, or had not taken the above oath. Whether use of the procedure by oath or list number one was mere election strategy or a convenience to the election officials is immaterial. Neither has any present basis in law. If the furnishing of list number one by the city clerk, or the oath above mentioned, had been required by law, our problem would be different. Failure to observe statutory or municipal election requirements is not involved in the solution of this problem. No allegation of fraud is contained in the complaint, nor is there any allegation or proof that the 340 persons, or any of them whose votes are questioned, were not qualified taxpaying electors.

While we do not wish to be understood as approving any irregularities such as the record may disclose, a

careful consideration of the points raised persuades us that there is no legal ground upon which this election can be declared null and void. The judgment, therefore, must be, and it accordingly is, affirmed.