No. 16,725.

City of Montrose *v.* Niles et al.

(238 P. [2d] 875)

Decided December 3, 1951.

Messrs. Moynihan-Hughes-Sherman, for plaintiff in error.

Mr. Theodore L. Brooks, for defendants in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

We will herein refer to defendants in error as plaintiffs, and to plaintiff in error as defendant.

On February 6, 1951, the City of Montrose conducted a special election to determine whether the city should issue $250,000.00 of general obligation bonds for the purpose of improving and enlarging the city water storage, processing, and distribution; and $100,000.00 of general obligation bonds for the purpose of improving and extending the city sewer system. The two issues were submitted to the voters as separate questions. The water bond issue was approved by a vote of 484 "for" to 453 "against." The sewer bond issue was approved by a vote of 466 "for" to 464 "against."

March 30, 1951, plaintiffs filed their complaint as residents and property owners within the City of Montrose, seeking on their own behalf and on behalf of "all persons similarly situated," to prevent the issuance of

said bonds by injunction directed to defendant city. It was alleged in the complaint that twenty-one illegal votes had been cast in favor of both bond issues. The alleged twenty-one illegal voters were not identified. Plaintiffs also alleged that one of the counting judges had illegally revealed the count to proponents of the issues, as it stood from time to time during the progress of the election, at which times the bond issues were trailing, and that this information caused the proponents of the bond issues to secure additional votes sufficient to change the result of the election.

Defendant, by answer, placed in issue all material facts alleged as grounds for the relief sought. Affirmative defenses were set up by answer, raising questions as to the jurisdiction of the court to grant injunctive relief, and whether plaintiffs were guilty of laches.

The trial court disposed of the controversy relating to the water bonds by pointing out that even if all twenty-one votes which were alleged to be illegal were withdrawn from the support of the water bond issue the result of the election would not be changed, since that issue carried by more than twenty-one votes. The only other ground alleged as to the water bond issue was that an election judge illegally gave out information concerning the count of the votes cast from time to time during the election. With reference to this issue the court said: "While the statute makes it a misdemeanor for a judge or clerk to disclose to anyone the comparative standing of candidates or questions being voted upon during the election while the polls are still open, for this reason alone the election will not be set aside unless this fact has been shown to affect the result of the election, which, in the opinion of the Court, has not been done in this case."

Although cross specification of points was filed by plaintiffs, it is not seriously argued that the court erred in thus disposing of the case in so far as it relates to the water bonds. We find no error with relation thereto and

accordingly we hereinafter consider only the contentions made as they relate to the sewer bond issue. The trial court in its findings and judgment on that issue ruled, in substance, that payment of a specific ownership tax on an automobile did not qualify a person to vote in this municipal bond election; that a purchaser of realty under a contract of sale was not a qualified voter·in said election; that an owner of personal property which had been assessed in the name of the spouse of such owner was not a qualified elector in the election, notwithstanding the fact that the taxes upon such personal property were paid out of joint funds of the husband and wife; that an owner of real property purchased in the year preceding the election, but after the time of the assessment thereof, was not a qualified elector; and that a person in all other respects qualified as an elector, but who was not registered as such, was not eligible to vote at the municipal bond election in controversy.

Applying these conclusions of law to the facts of the case, the result was that 449 valid votes were cast for the sewer bonds and 457 valid votes were cast against them. The court found that it had jurisdiction in the action; that there were no laches on the part of plaintiffs; and judgment was entered granting the injunction which prohibited the issuance of the sewer bonds. Defendant seeks reversal by writ of error.

Questions to be Determined.

First: *Was an owner of an automobile, who had paid the specific ownership tax thereon, a "taxpaying elector" who was entitled to vote under the law governing the municipal bond election which is the subject of this controversy?"*

This question is answered in the negative. The charter of the City of Montrose provides that the city council "shall have the power to issue bonds upon the majority of votes cast by the tax-paying electors at any special or general election * * *"; and that "the provisions of any state law, now or hereafter in force, except as the

council may otherwise by ordinance provide, relating to the qualification and registration of electors, the manner of voting, the duties of election officers, the canvassing of returns and all other particulars in regard to the management of elections, except as otherwise provided in this article so far as they may be applicable, shall govern all municipal elections." The City of Montrose has not made provision by ordinance for the conduct of municipal elections and because of said charter provision, and no ordinance giving a different guide, we resort to the statute of the State of Colorado for the definition of the term "taxpaying elector" as used in the charter. The pertinent statute is section 17, chapter 59, '35 C.S.A., and reads as follows: "The term 'taxpayer,' 'taxpaying elector' or 'qualified taxpaying elector' shall be held to mean and include only those persons who are qualified voters under the registration and election laws of this state and who, in the calendar year last preceding the election at which such vote is offered, shall have paid a tax, or be liable for the payment of such tax upon real or personal property assessed to them and owned by them in the county where such vote is offered."

The trial court, in applying this statute to the facts in this case, said, inter alia:

"The qualifications of voters fall under four categories: First, a voter must be a registered, legal voter under the laws of the State of Colorado; Second, the voters shall have paid a tax or be liable for the payment of a tax on real or personal property during the calendar year last preceding, in this instance, of 1950; Third, that said property must have been assessed to them and their names appear on the assessor's roll; Fourth, the property must be owned by them.

"It is the opinion of the Court that the Statute defining a qualified tax paying election [elector], being section 17, chapter 59, of the 1935 Colorado Statutes annotated, is explicit and definite and does not admit an interpre-

tation beyond its express letter, and it must be administered as we find it, * * *."

While it is true that the statute concerning the annual specific ownership tax, which must be paid before a motor vehicle will be licensed in Colorado, was adopted as a substitute for, and in lieu of, the ad valorem tax which would otherwise be assessable against the owner, the amount of the tax payable is a sum certain without regard to the mill levy which may be fixed for the support of any governmental subdivision. The specific ownership tax is not "assessed to" the owner of a car within the meaning of the statute. It is payable only in the event that a registration of the vehicle is sought and a license issued. If a motor vehicle is not used during a whole calendar year, and no registration thereof is had, no "specific ownership" tax need be paid thereon. In that event the ad valorem tax applicable to other kinds of personal property, which is increased or decreased as the total mill levy is raised or lowered, may lawfully be collected on an "assessment to" the owner of the car. Subdivision 4, section 108, chapter 16, '51 Cum. Supp. '35 C.S.A. This would be the payment of a personal property tax as determined by an assessment to the owner and proper application of the mill levy thereto, and would qualify the person, to whom the vehicle was assessed, to vote. However, the specific ownership tax is not that kind of tax.

On behalf of defendant is is argued:

"Prior to the passage of the Specific Ownership Tax Statute, a car owner paid an ad valorem tax on the car, and was unquestionably entitled to vote at a municipal bond election. We do not believe that the legislature intended to disfranchise car owners who are now required to pay a specified ownership tax in lieu of the prior ad valorem tax.

"To summarize; a man owns a car. He pays the specific ownership tax on the car. This tax is assessed against the car. It is a property tax. Part of the money

received by the municipality from such tax will be used to pay for the bond issue. Is the man entitled to vote as a qualified tax-paying elector at a municipal bond election?"

We think it a sufficient answer to this argument to say that, in construing the statute to determine whether the specific ownership tax made payable upon the registration of an automobile has the effect of qualifying the owner who pays such tax to vote at a municipal bond election, we are obligated to take into consideration the manifest purpose and object to be attained by adoption of the law requiring real or personal property ownership as a condition precedent to qualification as a "taxpaying" elector. That purpose or object was unquestionably to confine the voting privilege at an election to determine whether a bonded indebtedness should be authorized, to that portion of the citizenry whose tax liability would be increased by the adoption of the proposal authorizing the debt. The bond issues considered by the electors in this case would, if adopted, be paid from the general funds of the City of Montrose, and the indebtedness created thereby would be reflected by an increase of taxation on the property subject to the mill levy for municipal purposes. It is clear that under the pertinent charter provisions of the City of Montrose and the statute which defines "taxpaying electors," only those electors who paid, or were obligated to pay, taxes on real or personal property subject to the mill levy of the municipality were eligible to vote on this bond issue. To hold otherwise would be to permit untold numbers of voters to cast ballots in a municipal bond election, whose tax responsibility would not be affected in any degree whatever by the approval of the measure authorizing a bonded indebtedness. Whether the City of Montrose has a bonded indebtedness of one thousand dollars or one million dollars means nothing whatever in tax liability to the man whose only contribution to the support of government is the payment of a specific ownership tax

on an automobile. His tax is exactly the same without regard to the size of the bonded indebtedness. The tax on real or personal property, as used in this statute, unquestionably means a tax on property which is subject to the mill levy of the city.

Second: *Under the charter of the City of Montrose, and statutory provisions applicable to this case, is a person who owns property which is assessed in the name of another, or a purchaser of realty under a contract of sale, a "taxpaying elector" and qualified to vote in the municipal bond election under consideration?*

We answer this question in the negative. It is argued on behalf of defendant that on the authority of *Saxton v. Mayor* (Delaware), 88 Atl. 605: "A liberal, rather than a strict rule of qualification of voters representing property should prevail at an election, when those who pay the debts through the taxation of their property are voting whether the debts shall be contracted." We said in *People ex rel. v. District Court,* 18 Colo. 26, 31 Pac. 339: "The conclusion that the secretary of state should under the circumstances certify both sets of nominations to the county clerks to be printed upon the official ballots, is in harmony with the rule of construction which requires the courts *in cases of doubt* between two constructions to follow that which will afford the citizen the greater liberty in casting his ballot." (Italics supplied.) It is equally clear that where a statute is explicit and free from ambiguity, there is no room for interpretation or construction beyond giving effect to the common and accepted meaning of the words employed in the act. *People v. Elliff,* 74 Colo. 81, 219 Pac. 224; *Jones v. Board of Adjustment,* 119 Colo. 420, 204 P. (2d) 560. The instant statute explicitly provides, inter alia, that taxpaying electors are those who "* * * shall have paid a tax or be liable for the payment of such tax upon real or personal property *assessed to them and owned by them* in the county where such vote is offered." (Italics supplied.) We said in *Jain v. Bossen,* 27 Colo. 423, 62 Pac. 194: "The

requirements of the law on the qualifications of electors are mandatory, and must be strictly observed." The language used in this statute "assessed to them and owned by them," was mentioned by us in *People ex rel. v. Montrose,* 109 Colo. 487, 126 P. (2d) 1040, from which we quote: "The contention of counsel for plaintiff is that the language of the section just quoted, designating qualified taxpayers on property 'assessed to them and owned by them,' is in the conjunctive, * * *. There is merit in this contention, * * *."

■■ Thus ownership of property in and of itself is insufficient to qualify a citizen to vote in an election of this kind. The property owned must in fact be "assessed to" him upon the assessment rolls of the county. We must construe the statute as we find it, and, where the meaning is clear, we cannot amend it by construction to conform to what we might believe to be an improvement. The general accepted meaning of the words used can lead to no other conclusion, and the trial court did not err in excluding the votes questioned upon the ground under discussion.

■ Third: *In the municipal bond election under consideration, is a person who possesses all qualifications as to ownership and assessment of property entitled to vote over the objection that he is not registered?*

This question is answered in the negative. A non-registered applicant to vote is unquestionably not entitled to vote, and the trial court committed no error in so holding.

We have carefully considered the objections of defendant based upon the question of the court's jurisdiction, and laches, and find them without merit.

The judgment accordingly is affirmed.

MR. JUSTICE HOLLAND dissents.

MR. JUSTICE CLARK did not participate.