No. 22270.

WILLIAM C. RUSSELL, JR. AND ELDON L. CULL *v.*
BEVERLY WHEELER, ET AL.
(439 P.2d 43)

Decided March 25, 1968. Rehearing denied April 22, 1968.

ALBERT B. DAWKINS, ROBERT E. HOLLAND, RICHARD D. GILSON, for plaintiffs in error.

RAYMOND J. CODY, JOHN W. LENTZ, for defendants in error.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

In a school bond election contest action, the county court of Gilpin County entered a judgment of dismissal at the conclusion of the plaintiffs' evidence on the grounds that the plaintiffs (contestors) had failed to sustain their burden of proof by establishing a prima facie case. The contestors assigned several grounds, itemized hereinafter, upon which they claim the trial court erred in granting the defendants' (contestees) motion to dismiss the complaint. We call attention to our decision in *Russell v. Wheeler*, 159 Colo. 588, 413 P.2d 700 involving an original proceeding for clarification of jurisdiction, wherein we held that by statutory interpretation the Supreme Court was the proper court in which to pursue a review of a school bond election contest judgment by a county court.

This school bond election was held December 18, 1965 for the purpose of voting for or against the issuance of bonds to finance a school building in Gilpin County School District RE-1. This same election is involved in

*Crowe v. Wheeler*, 165 Colo. 289, 439 P.2d 50, announced simultaneously with this opinion. In the companion case, the same plaintiffs and others had sought to enjoin this election, and in addition, requested a declaratory judgment defining who is a qualified taxpaying elector as that term is defined in 1965 Perm. Supp., C.R.S. 1963, 123-11-1 (4). We therein affirmed the judgment of the district court, which refused to enjoin the election and which entered a judgment of dismissal of the complaint on the grounds of mootness.

Two of the issues to be resolved herein were urged as issues in the companion case but were rejected for the reasons therein explained. These issues are:

(1) Is a purchaser of real estate under a contract of sale, who is obligated thereunder to pay the taxes, and is otherwise qualified to vote, a qualified taxpaying elector?

(2) Was the published notice of election deficient for the reason that it described the boundaries of the school bond election precincts by reference to county election precincts rather than setting forth a legal or more detailed description of the boundaries?

This action was commenced in the trial court by filing a statement of intention to contest the special school bond election, wherein 234 votes were counted in favor of issuance of bonds and 214 votes against. The contestors, as two qualified taxpaying electors, alleged that 39 persons, listed in their statement of intention, were not qualified taxpaying electors; that they voted illegally; that the votes cast by these persons were counted in sufficient numbers to change the result of the election; and that the published notice of election was deficient because it failed to properly describe the school bond election precinct boundaries. Based on these grounds, the contestors prayed that the trial court nullify the election and decree that the issuance of the school bonds was therefore not approved.

The contestees are members of the Board of Edu-

cation of Gilpin County School District RE-1, the County Clerk and Recorder of Gilpin County, and the remaining named contestees were judges and clerks of the polling places. On behalf of the contestees, responsive pleadings were filed wherein it was denied generally that illegal votes were cast; and that the published notice of election was violative of any of the mandatory requirements of law. Affirmatively, the contestees alleged that 28 of the 39 alleged illegal voters were improperly challenged by one Helen K. Mueller, an alleged unqualified challenger, and therefore, these challenges and the votes related thereto, were in effect not subject to inquiry by the trial court.

Before trial, contestors filed a motion for change of judge on the grounds that the County Judge of Gilpin County was "interested" in the school bond election and should disqualify himself in accordance with C.R.S. 1963, 37-1-24. This motion was denied by the court. This refusal by the County Judge to remove himself as the trial judge is also assigned as error, and as grounds for reversal.

At the conclusion of contestors' case, the trial court granted contestees' motion to dismiss on grounds that the contestors failed to sustain their burden of proof and failed to establish a prima facie case. The trial court's findings of fact and conclusions of law, in effect, state that Mrs. Mueller, as a contract purchaser, was not an owner of property and that the taxes she paid on real property was as an agent for the record owner; that Mrs. Mueller was therefore not a qualified taxpaying elector nor a proper challenger of the 28 voters, and therefore, the 28 challenges were not valid.

In addition, upon hearing and denying the motion for new trial, the court found, on the boundaries issue, that there was no evidence to show that anyone was confused as to where to go to cast his ballot; that "What it comes down to, a reasonable person who desires to vote can easily find out where to cast his ballot"; and that "there

was no error committed in the publication of the notice." Additionally, at this time the trial judge stated that he noted some illegal voters but not enough in numbers "to materially change" the results of the election.

It is our appraisal, after examination of this record, which includes the transcript of the voluminous testimony before the trial court, that this writ of error presents the following three issues of merit for our determination and the proper resolution of this controversy.

I.

Did the county judge of Gilpin County commit prejudicial error in refusing to disqualify and remove himself as the trial judge based upon the alleged facts and circumstances concerning his purported interest as shown from the record on error?

The contestors' "Motion for Change of Judge" and the accompanying affidavits by the two contestors claim the judge is "interested in the election contest" and "prejudiced against the contest" because of the following reasons. He voted at the election and he publicly expressed approval of a new school building and the bonds to finance it. Additionally, the judge's wife had been an unsuccessful write-in candidate for director of District B of the Gilpin County School District RE-1 at a previous election, at which time she was favorable to the plan of building a new school and the issuance of bonds for this purpose. Also, that the judge had, in another unrelated action, made a ruling in connection with a petition for recall which ruling was in favor of Robert G. Crow, a member of the board of education and one of the contestees. This and the viewpoints of the judge's wife are without merit as grounds for his disqualification.

The contestors contend that the county judge of Gilpin County should have removed himself as the trial judge in accordance with C.R.S. 1963, 37-1-24 which provides: "When judge shall not act unless by consent. — A judge

shall not act as such in any of the following cases: In an action or proceeding to which he is a party, or in which he is interested; when he is related to either party by consanguinity or affinity in the third degree; or when he has been attorney or counsel for either party in the action or proceeding, unless by consent of all parties to the action."

R.C.P. Colo. 397 contains similar provisions pertinent to the issues presented here.

 In considering the issue of the trial court's purported interest in the subject matter and outcome of this school bond election contest, it is necessary to differentiate between what may be said to be a "private" interest and a "public" interest in the subject matter of the controversy and the outcome of it. It is clear that any personal or private interest as is contemplated by C.R.S. 1963, 37-1-24, *supra*, would disqualify the county judge of Gilpin County as the trial judge, and his refusal to remove himself as the trial judge would be grounds for reversal. In this same vein, it is likewise clear that any action involving a situation where the trial judge may benefit in a pecuniary way depending upon his decision, would be a prime example of a situation in which a trial judge would have no alternative other than to disqualify himself.

 This "interest" of the trial judge is in our view a public interest and is not the same character of interest which compels disqualification as would a private interest. A public interest is an interest shared by citizens generally in the affairs of local, state or national government. An interest which a judge may have as a citizen in a public question or issue is no basis per se for his removal as the trial judge in an action contesting an election determinative of the public question or issue. It is in this area of public interest that a judge upon being challenged as he was in the case at bar, may in his discretionary prerogative remove himself, but if he refuses, his decision will not be reversed unless it is

shown convincingly that his interest was so intense that a probability existed that his decision would be tainted. We have minutely studied the motion for disqualification, the attached affidavits and exhibits and have concluded therefrom that they are insufficient to show that the county judge had such an interest in the bond election contest or that he was so prejudiced against the contest action that he should have as a matter of law disqualified himself. We hold, under the facts and circumstances of this case, that the matter of disqualification was within the sound discretion of the trial judge, who, after a hearing on this motion, stated that he had "searched his soul" before making a decision not to disqualify himself.

We do not agree with the contestors' argument that in a pecuniary sense the trial judge was personally affected by the outcome of the bond election contest, because as a qualified taxpaying elector he was the owner of property which would be charged with the obligation of the school bonds. In our view, such a pecuniary advantage or disadvantage which might accrue to the trial judge is so contingent, speculative and remote as to be of no consequence. Public improvements, like new school buildings, may have the effect of increasing the tax obligation on real property but they also result in increasing the value of the property so that it is therefore next to impossible to state as a matter of certainty that a public improvement will be a disadvantage or advantage to any given piece of property. See *Fehr v. Hadden*, 134 Colo. 102, 300 P.2d 533 which involved an election by stockholders of a mutual water company to declare a bond issue invalid. A motion was therein filed to disqualify the trial judge because the judge was a water user of the corporate defendant and his rates may be affected by the bond issue. This contention was rejected by this court.

We therefore hold that the trial judge was not in error when he refused to disqualify himself.

II.

▪ The contestors urge that the boundaries of the school election precincts were not set forth in the published election notice in sufficient detail as required by 1965 Perm. Supp., C.R.S. 1963, 123-31-13, and that therefore, the election should be voided. We do not agree. In our view, the description of the boundaries, by reference to county election precincts, as set forth in the published election notice were in substantial compliance with the requirements of this statute.

1965 Perm. Supp., C.R.S. 1963, 123-31-13 provides: "Notice of school election. The secretary of each board of education shall give written or printed notice of the regular biennial school election, specifying the day and polling places of such election, the boundaries of school election precincts, the time during which the polls shall be open, the offices and questions to be voted on, the names of all candidates who have been nominated, and the qualifications for an elector to vote at said election. Said notice shall be published for the two weeks next preceeding such election, in some newspaper having general circulation in the district, in accordance with the provisions of article 1 of chapter 109, C.R.S. 1963."

▪ The word "boundaries" as used in this statutory provision has not been subjected to technical definition by case law generally or specifically. As we understand the contestors' argument, the use of the words "boundaries of the school election precincts" impliedly requires a detailed legal description of the boundaries by metes and bounds and section lines, etc. In our opinion, such a description in addition to being cumbersome, would be most difficult for the normal voter to understand and would unquestionably cause great confusion. It is therefore unlikely that this was the legislative intent of this particular statute.

On the other hand, describing these school election precincts in the published notice of election as being the same as the county election precincts and as being num-

bered in the same manner presents to the voting public a more adequate description of these precincts, and, in our view, substantially complies with the statutory requirement. In this manner the school election precincts are set forth in clear and ordinary terms understandable to the normal voter. This method of description of the school election boundaries will immediately convey to most voters, based upon their experience in past general elections, the location of their voting precinct.

Where school election precincts however are of different boundaries than the county election precincts, a problem not present here, a map outlining the school election precincts might be necessary in an election notice to adequately inform the voting public. This method of boundary description might have been desirable under the circumstances here but we cannot say that such is mandatory by strict statutory construction of the word "boundaries" or by the application of legal principles as to what constitutes adequate notice.

We therefore hold that the published election notice complies substantially with the statutory requirement and that the trial judge properly ruled that the published election notice was sufficient.

III.

We now consider the issue which is paramount in our view. Is a purchaser of real estate under a contract of sale, who is obligated thereunder to pay the taxes, and is otherwise qualified to vote, a qualified taxpaying elector in a school bond election?

1965 Perm. Supp., C.R.S. 1963, 123-11-11(1) provides that to vote at a school bond election, a person must be a "qualified taxpaying elector" which term is defined in 1965 Perm. Supp., C.R.S. 1963, 123-11-1(4) as follows: " 'Taxpaying elector' and 'qualified taxpaying elector' mean any person who is at least twenty-one years of age, a citizen of the United States, and who has resided in the state for twelve months, in the county for ninety days, in the school district thirty days, and in the school

election precinct fifteen days immediately preceding the election at which he offers to vote, and who, during the twelve months next preceding said election, has paid an ad valorem school tax upon property situated within the school district and owned by said person; and the term 'registered qualified taxpaying elector' means a qualified taxpaying elector who has registered pursuant to the requirements of section 123-11-10."

In defining a similar provision of law describing who is a qualified taxpaying elector in a municipal election, this court in *Montrose v. Niles*, 124 Colo. 535, 238 P.2d 875 held that a purchaser of realty under a contract of sale is not a taxpaying elector. In our view the interpretation in *Montrose* is also applicable to 1965 Perm. Supp., C.R.S. 1963, 123-11-1(4), *supra*.

Furthermore, in holding that the *Montrose* interpretation is applicable here, we must presume that this interpretation is in accordance with the legislative intent. This is so because the legislature, in defining who is a qualified taxpaying elector in other statutes relating to other kinds of elections, has specifically provided that a person, otherwise qualified to vote, who is obligated to pay general taxes under a contract of purchase of real property shall be considered as an owner and therefore, qualified to vote. 1965 Perm. Supp., C.R.S. 1963, 89-14-2(3) (pertaining to hospital district elections) and C.R.S. 1963, 89-15-2(10) (pertaining to metro sewer disposal district elections) are two of the statutes we have in mind which specifically state that a contract purchaser of real property is includable in the definition of a qualified taxpaying elector. The absence of such a specific provision in 1965 Perm. Supp., C.R.S. 1963, 123-11-1(4), *supra,* is a convincing indicator that the legislature did not intend to expand the definition of a qualified taxpaying elector in a school bond election to include an elector who is purchasing real estate under a contract of sale. This lack of uniformity as to who is a qualified taxpaying elector in different types of bond

elections is, we believe, unfortunate. However, this is a legislative and not a judicial problem.

In addition to finding that Mrs. Helen K. Mueller was not a qualifed taxpaying elector, the trial court also found that she therefore was not qualified to challenge the 28 votes at the polling place. 1965 Perm. Supp., C.R.S. 1963, 123-11-1(4) requires that a challenger at a polling place must be a qualified taxpaying elector. The trial court's finding in this respect is correct, but it is immaterial as a basis for the court's determination of no prima facie case.

There is no statutory requirement that contested votes must be votes which are challenged at the polling place. Illegal votes, whether challenged or not, may be considered in an election contest. Proceedings to contest the validity or result of any school bond election are governed by 1965 Perm. Supp., C.R.S. 1963, 123-11-12(2) which in part states:

". . . In all cases, the rules, practice, and procedures for contested elections for county officers as otherwise provided by law shall apply insofar as applicable."

C.R.S. 1963, 49-17-10 is the statutory requirement for contesting elections for county office. Subsection (6) thereof refers to the procedure required when "illegal votes" are alleged to be the cause of the contest. Nowhere in this statute does it state that such "illegal votes," before they can be made a cause of a contest, must be challenged at the polling place. Therefore, regardless of the fact that the 28 votes were illegally challenged, they, nevertheless, should not have been eliminated in the court's consideration of whether a prima facie case had or had not been established by contestors.

It is evident to us that the trial court must have eliminated from consideration these 28 illegally challenged votes, because our review of the testimony and evidence pertaining to the voting qualifications of the 39 contested voters, reveals a prima facie showing of at

least 21 illegal voters. We therefore conclude that the premise upon which the trial court found no prima facie case is basically wrong.

On a motion for dismissal at the conclusion of a plaintiff's evidence, every reasonable and legitimate inference which may be drawn from the evidence, must be resolved in favor of a plaintiff; and in applying this rule, a trial court may dismiss only where there is no evidence on a material element, or there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff. *Nelson v. Centennial Cas. Co.*, 130 Colo. 66, 273 P.2d 121 and *Gossard v. Watson*, 122 Colo. 271, 221 P.2d 353.

It is obvious from the record that the trial court not only failed to apply this well established rule, but that it improperly eliminated from consideration a portion of the contestors' evidence of non-payment of taxes and no record of ownership by some of the voters whose votes were not validly challenged.

Plaintiffs in an election contest must plead and establish not only that illegal votes were cast, but that the number of illegal votes were sufficient in number to change the result of the election. *Suttle v. Sullivan*, 131 Colo. 519, 283 P.2d 636 and *Schwarz v. County Court*, 14 Colo. 44, 23 P.84. As stated previously, the record reveals sufficient prima facie evidence of at least 21 illegal voters which would be sufficient in number to change the result of the election. We therefore hold that the trial court's finding of no prima facie case is not supported by the record.

We note that when the trial judge denied contestors' motion for a new trial he made the comment that he had counted 17 illegal votes. This number of illegal votes is insufficient to change the result of the election, and we therefore presume the motion for new trial was denied on this basis. Suffice it to say, the record reflects prima facie evidence of more than 17 illegal votes, and in fact at least 21 illegal votes, which would be suffi-

cient to change the result of this school bond election. The denial of the motion for a new trial was therefore improper.

For the reasons heretofore expressed, we hold that the trial court erred in dismissing the complaint and entering judgment for the contestees at the conclusion of the contestors' evidence.

The judgment of the trial court is reversed and this cause is remanded for a new trial in accordance with the views expressed herein.

MR. JUSTICE MCWILLIAMS not participating.