The Honorable Richard D. Lamm Governor State of Colorado 136 State Capitol Building Denver, Colorado 80203
John Perko Deputy Director Colorado Department of Corrections Suite 2200 North Building 2860 South Circle Drive Colorado Springs, CO 80906
Dear Governor Lamm and Mr. Perko:
I am writing in response to your request for a formal legal opinion regarding the Department of Corrections' authority to extend the limits of an inmate's confinement pursuant to C.R.S. 1973, 16-16-103(2) (1978 repl. vol. 8).
QUESTIONS PRESENTED AND CONCLUSIONS
A. Does the Colorado Department of Corrections have the authority to extend an inmate's limits of confinement for a period of time not exceeding 30 days?
 My conclusion is that the Department of Correction is so authorized.
B. For what purpose may an inmate's limits of confinement be extended?
 An inmate's limits of confinement may be extended for any purpose specified in C.R.S. 1973, 16-16-103(2) (1978 repl. vol. 8).
C. With what frequency may the Colorado Department of Corrections extend an inmate's limits of confinement?
 As there is no stated limit to the number of times an inmate's limits of confinement may be extended, I conclude that this determination is one which must be made on a case by case basis in a manner which does not thwart the public's interest in continued confinement.
D. Does C.R.S. 1973, 16-16-103(2) (1978 repl. vol. 8) authorize the establishment of the intensive supervision program?
 I conclude that no authorization for the intensive supervision program can be found therein.
ANALYSIS
A. C.R.S. 1973, 16-16-103(2) (1978 repl. vol. 8) clearly authorizes the superintendents [1] of correctional facilities,[2] in the exercise of their discretion, with the assistance of the director of adult services to extend an inmate's limits of confinement for a period not to exceed 30 days.
B. C.R.S. 1973, 16-16-103(2)(a)(I)-(V) (1978 repl. vol. 8) provides that an inmate's limits of confinement may be extended to allow him to travel to and from and visit a specified place or places for a period not to exceed 30 days for any of five stated purposes. Moreover, the 30-day period is an absolute maximum which would necessarily find justification in the facts of a particular case (i.e. if it only takes 20 days to effectuate a statutory purpose, such as a visit to a family member, this would be the period of time during which an inmate's limits of confinement could be extended).
Further limitations in the form of additional conditions precedent, are found in the individual subparagraphs I-IV.
Subsections I through III permit extension of the limits of confinement, at the superintendent's discretion in the following instances:
a. Authorization to visit a member of the inmate's immediate family who is in danger of death. (Subsection I);
b. Authorization to attend funeral services or other last rites of a member of the inmate's immediate family.[3]
(Subsection II); or
c. Authorization to obtain health services otherwise not available to the inmate at an institution operated by the State of Colorado. (Subsection III)
Subsection IV allows an extension of limits of confinement, "to interview prospective employers under the supervision of the director of the division of adult services." Consequently, the first four stated purposes for which limits of confinement may be extended are extremely limited in nature.
Subsection V allows an extension of limits of confinement for "any other purpose consistent with the public interest." It is not indicated in this subsection whether the facility superintendent or the director of the division of adult services is to exercise his discretion to determine what is in the public interest. For that reason, reference is made to C.R.S. 1973,16-16-103(2) (1978 repl. vol. 8), which states that the superintendent is to be assisted by the director of adult services in this determination.
The lack of a statutory definition for the term public interest, further complicates this issue. This term has been defined as, "an interest shared by citizens generally in the affairs of local, state or national government." Russell v.Wheeler, 165 Colo. 296, 439 P.2d 43, 46 (1968). Another definition states that the public interest is, "something in which the public, the community at large, has some pecuniary interest, or some interest by which their legal rights or liabilities are affected. It does not mean anything so narrow as mere curiosity, or as the interests of the particular localities, which may be affected by the matters in question." State v.Crockett, 86 Okla. 124, 206 P. 816, 817 (1922).
An understanding of the "public interest purpose" requires an analysis which, in light of the above, also considers the statutory context which this subsection was enacted. With the exception of subparagraph V, all other purposes for which an inmate's limits of confinement may be extended are in the interest of the inmate and further require, as a condition precedent to the extension, an actual need on the part of the inmate which is then defined so that it deals with specific exigencies which may arise during an inmates' period of confinement; such as the death of a family member.
It follows that an extension of commitment which is in the public interest would require, as a condition precedent to the extension, an actual need on the part of the public which arises under exigent circumstances; such as a fire threatening a town. Consequently, an extension of commitment under this subsection, could be made only after careful analysis on a case by case basis of the justification therefor and would be utilized only in extremely limited circumstances. The utilization of the public interest provision is further limited by conditions set forth in C.R.S. 1973, 16-16-103(2)(a) (1978 repl. vol. 8) (supra) and the discussion regarding frequency below.
C.R.S. 1973, 16-16-103(2)(b) allows an extension of limits of confinement for the purposes of working at paid employment or participating in a program of job training. However, before these purposes may be utilized, conditions precedent contained in subsections I, II and III must be satisfied. It is also important to note that there is no 30 day period applicable to this particular subsection. As a result, this particular extension of confinement can exist only for that period of time during which an inmate is actually working or participating in a program of job training (i.e. an 8 hour workday.) After said period is over, the inmate would be required to return to the facility in which he is confined. Again, C.R.S. 1973,16-16-103(2) (1978 repl. vol. 8) indicates that the extension of confinement provided for in this subsection would be made subject to the discretion of the superintendent with the assistance of the director of the division of adult services.
C. Pursuant to 16-16-103(2)(a) (I-IV) (1978 repl. vol. 8) an inmate may be released as many times as necessary to allow him to attend funerals for immediate family members (e.g., given 10 immediate family members the inmate could conceivably be released for 10 separate periods not to exceed 30 days each, assuming compliance with all other statutory requirements). Likewise under subsection V, an inmate could be released as many times as it could be determined that said release would be in the public interest.
However, other facts are important in the consideration of the frequency with which an inmate's limits of confinement could be extended. C.R.S. 1973, 16-11-301(1) (Supp. 1982) provides that as a general rule, imprisonment for a conviction of a felony by an adult offender shall be served by confinement in anappropriate facility as determined by the executive director of the Department of Corrections. (emphasis added). Since C.R.S. 1973, 16-16-103, in its entirety, is an exception to this general rule, all of its provisions should be strictly construed.
In addition, C.R.S. 1973, 16-16-103(4) (Supp. 1982) states that, "The extension of the limits of confinement shall not for any purpose be considered to be parole as provided for in part 2 of title 17, C.R.S. 1973." Moreover, an inmate may be paroled only after he has served his minimum sentence. C.R.S. 1973, 17-22.5-103
(Supp. 1982).[4] Therefore, a reading of these statutes, in pari materia, reveals a strong legislative intent that the provisions of C.R.S. 1973, 16-16-103 not be utilized as a means of enabling an inmate to serve his sentence outside the confines of a correctional facility.
Consequently, another factor important in the consideration of the frequency with which an inmate's limits of confinement should be extended, is whether such an extension would frustrate clear legislative intent that his time be served in a correctional facility. Thus, an inmate who would otherwise be "qualified" to have an extension of limits of confinement could be denied this privilege if officials of the Department of Corrections, in an exercise of their discretion, determined that the extension would frustrate the above stated intent. It follows that any extension pursuant to this statute should be scrutinized with great care to avoid thwarting the public's interest in continued confinement.
D. The intensive supervision program allows an inmate who has successfully completed at least 90 days in a community corrections facility, and has been approved for the program by the local community corrections board, to be released to an approved residence, under the close supervision of a parole agent, for a period of time up to 120 days.
At the onset, it can be seen that the 120 day period alone would not be authorized by C.R.S. 1973, 16-16-103(2) (1978 repl. vol. 8). Also, this program does not require compliance with the stated statutory purposes as a condition precedent of the extension of an inmate's limits of confinement. In addition, as discussed above, the statute, by its very nature, was not intended to provide the authorization for a continuous program, but rather was intended to be utilized only in exigent circumstances. Finally, any benefit which might be derived from the program must be balanced against considerations of public safety and the legislative mandate that an inmate should serve his sentence in a correctional facility. As a result, I conclude that the intensive supervision program is not authorized by C.R.S. 1973, 16-16-103(2) (1978 repl. vol. 8).
SUMMARY
The department of corrections is authorized, pursuant to C.R.S. 1973, 16-16-103(2) (1978 repl. vol. 8), to extend an inmate's limits of confinement for a period not to exceed 30 days. This may be done for the limited purposes set forth in the statute16-16-103(2)(a) I-IV, (b) (1978 repl. vol. 8) and when it can be shown that the extension of limits of confinement is in the public interest. C.R.S. 1973, 16-16-103(2)(a) V. This action can be taken on a limited basis when the requirements of the above indicated statutes are satisfied so long as the public's interest in continued confinement is not thwarted. These determinations will generally need to be made on a case by case basis upon exercise of the discretion of the superintendent of the particular facility. Finally, the intensive supervision program is not authorized by C.R.S. 1973, 16-16-103(2) (1978 repl. vol. 8).
Very truly yours,
 DUANE WOODARD Attorney General
CORRECTIONS CORRECTIONAL FACILITIES PRISONERS
C.R.S. 1973, 16-16-103(2)
C.R.S. 1973, 16-11-301
C.R.S. 1973, 17-2-204
C.R.S. 1973, 17-22.5-103
GOVERNOR, OFFICE OF CORRECTIONS, DEPT. OF
The department of corrections is authorized, pursuant to C.R.S. 1973, 16-16-103(2) (1978 repl. vol. 8), to extend an inmate's limits of confinement for a period not to exceed 30 days. This may be done for the limited purposes set forth in the statute16-16-103(2)(a) I-IV, (b) (1978 repl. vol. 8) and when it can be shown that the extension of limits of confinement is in the public interest. C.R.S. 1973, 16-16-103(2)(a) V. This action can be taken on a limited basis when the requirements of the above indicated statutes are satisfied so long as the public's interest in continued confinement is not thwarted. These determinations will generally need to be made on a case by case basis upon exercise of the discretion of the superintendent of the particular facility. Finally, the intensive supervision program is not authorized by C.R.S. 1973, 16-16-103(2) (1978 repl. vol. 8).
[1] Superintendent is defined as "the chief correctional officer at any correctional facility." C.R.S. 1973, 16-16-102(6) (Supp. 1982).
[2] Facility is defined as "any residential, community treatment center, honor farm, preparole release center, or other correctional facility." C.R.S. 1973, 16-16-102(2) (Supp. 1982).
[3] "Immediate family" means a spouse, child (including step-child, adopted child, or child as to whom the prisoner, though not a natural parent, has acted in the place of a parent), parent (including a person, who though not a natural parent, has acted in the place of a parent), brother, or sister. C.R.S. 1973, 16-16-102(3) (1978 repl. vol. 8).
[4] An inmate sentenced prior to July 1, 1979 would also need approval of the parole board prior to his release on parole. C.R.S. 1973, 17-2-204.